# TEXAS AND PACIFIC RAILWAY COMPANY *v.* CARLIN.

**ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.**

No. 222.   Argued March 20, 1903.—Decided April 6, 1903.

Where it is the special duty of the foreman of a gang repairing a bridge to see that the track is unobstructed when a train is about to cross, although it may be the duty of the men to keep their tools off the track, it is the foreman's duty to supervise them, and if, through his negligence, the track is not left unobstructed and one of the gang is injured, such negligence under the statutes of Texas in that regard is that of a vice-principal and not of a fellow-servant.

Where the facts in the case are that the workman was injured by being hit by a spike maul which had been left on the track and which was struck and thrown by the engine, the fact that the foreman himself, who is to some extent an interested witness, testifies that he had looked along the track and saw no obstruction, is not sufficient to take the question of his negligence away from the jury.

THE plaintiff in error brings this case here to review the judgment of the United States Circuit Court of Appeals for the Fifth Circuit, 111 Fed. Rep. 777, affirming the judgment in the Circuit Court for the Northern District of Texas, entered

upon the verdict of a jury in favor of defendant in error on the trial of this action brought by him against the railway company to recover damages for personal injuries. On the trial it appeared that Carlin, the plaintiff below, was in the employment of the railway company in September, 1898, as a bridge carpenter. On that day he, with a number of others forming what is termed the bridge gang, of which George Welsh was foreman, was employed in making some repairs on a bridge near the Aledo water tank, not far from Weatherford, Texas. The bridge was over a creek, and was sixty to sixty-five feet long. The force got to work on the bridge about ten minutes after 8 o'clock in the morning under Welsh, the foreman. The surface of the bridge was plain ; the ties were about eight inches apart, and there was nothing on top of them except the rails and the guard-rails, the rails being of ordinary size, and the guard-rails about ten inches from the rails and parallel with them. The guard-rails were eight inches wide and stood four inches above the ties, being let down over the ties about two inches, and were of wood. Some time after the men had been working on the bridge a freight train was seen approaching at the rate of from thirty to forty miles an hour. Within a very few minutes before the train was seen one of the workmen on the bridge had in his hand what is called a spike maul, used for the purpose of driving spikes. The maul was of iron with a handle about three feet long, the hammer being six, eight or perhaps ten inches in length, and the handle went into the middle of the head, which had a double face. Carver was the man who was using the maul a few minutes before the train came. The maul weighed about ten pounds. At the time Carver was using the maul, he had it out on the bridge with him. A witness for the defendant stated that he had been using the maul on the south side of the bridge for putting up the staging or scaffolding, and when he finished he handed it to some one on the top of the bridge, who handed it to Carver on the north side of the bridge, to spike on a brace. It was used but ten or fifteen minutes before the passage of the train. Carver stated he did not remember where he had put the maul when he had finished using it, but he said

he was always careful to put it out of the way so there would be no accident. He had nailed the last piece of timber on the bridge and got down on the ground and was about ten feet from the plaintiff, and had not been there over three or four minutes when the train passed. The witness saw no other spike maul or hammer there that morning than the one which he used, which was the regular spike maul described by the witness, and which he found after the train passed.

The train coming from the west was seen some little distance before it reached the bridge and the people on the bridge got out of its way, and as the train passed over the bridge towards the east the plaintiff, who was standing a short distance from the east end of the bridge, was struck by the spike maul on the leg and was so badly injured that amputation of the leg above the knee was necessary and was performed. The train on its passage across the bridge struck the spike maul and threw it in the direction that the train was going with such force toward the plaintiff as to effect the injury mentioned, although the train was not seen to strike the maul nor was the maul seen to strike the plaintiff. All that is known is that the train passed the bridge, and as it passed the maul struck the plaintiff, and the handle was broken close up to the head.

It was customary when workmen were engaged in repairing a bridge for the foreman to see that the bridge was cleared and unobstructed whenever a train was about to pass. It was the duty of the workmen to put their tools out of the way when a train was coming, but it was specially the duty of the foreman to see that the bridge was clear, and " that was his business and that was what he was for." Welsh, the foreman of the bridge gang, testified that he had no recollection of seeing any one using the spike maul that morning; that he had been around all parts of the bridge, both on top and underneath it, before the train had passed. He says when he saw the train coming he looked up and down the track to see if everything was clear, and did not see anything, and stepped one side when the train was three or four hundred yards from him. He said he had plenty of time if there had been anything on the bridge to have taken it off; that when a man was using tools and got

through with them he was supposed to take care of them and put them out of the way ; that the foreman was liable to be anywhere about the bridge at any time, and could not be depended upon to be at any particular place, but if there were men working on top of the bridge it would be their duty to be on the lookout always, as they must expect a train at any time. He also said that he was foreman, and that as bridge foreman he had employed Carlin and had supervision over him, and had power to employ and discharge him as well as the other bridge men who were working there that morning.

The evidence was not disputed that, although it was the business of each workman to see to it that his tools were not in the way of an approaching train, yet that it was particularly the duty of the foreman to see that the bridge was cleared from all obstacles when a train came.

This is in substance the evidence submitted to the jury upon the question of the negligence of the defendant.

The judge charged that the burden of proof was upon the plaintiff to show that the defendant was negligent and that the plaintiff was injured thereby ; that the defendant was bound to exercise ordinary care to furnish a reasonably safe place within which employés could perform their duties ; that the foreman of the bridge gang was, under the evidence, the vice-principal of the defendant company, and that the negligence of which the defendant was accused consisted in the failure on the part of the foreman of the bridge gang to use ordinary care to remove or to see and remove the spike maul before the arrival of the train at the bridge.

The court also charged that, if the jury believed from the evidence that the spike maul was left on the bridge by a fellow-servant of the plaintiff, and that, at the time the train approached, the foreman of the bridge gang was the only person upon the bridge, and that he could, by the exercise of ordinary care, have seen the spike maul and removed it from the track and from proximity thereto, and if they believed it was on the track or within proximity thereto, and if the jury believed that it was the duty of the foreman to use such care to see that the track was clear and no obstructions on it, or so near to it as to

be struck by a passing train, and if the jury believed that the
foreman did not use that care, and that the spike maul was
struck by the train and hurled against the plaintiff and caused
the injuries, and if the jury believed it was the negligence of
the foreman in failing to see and remove the spike maul, and
if his negligence in that respect was the direct and proximate
cause of the injuries sustained by the plaintiff, then the court
charged that the plaintiff was entitled to recover, but that if
the injury was caused by the negligence of a fellow-servant,
and that the foreman in charge of the bridge gang was not
guilty of negligence which directly and proximately contributed
to the injury of the plaintiff, then the verdict should be for the
defendant.

The court further charged that the defendant should not be
held responsible for the consequences of an act of negligence
which could not reasonably be foreseen, and that it was not
actionable negligence to fail to do an act when it would not
have been anticipated by a man of ordinary care and prudence
that such failure to perform the act would result in injury to
any one.

Various requests to charge were made by counsel for the
defendant and refused by the court, not necessary to be here
specifically mentioned.

The jury, as stated, found a verdict for the plaintiff.

*Mr. David D. Duncan* for plaintiff in error. *Mr. John F.
Dillon* and *Mr. Winslow S. Pierce* were on the brief.

*Mr. F. E. Albright* for defendant in error. *Mr. E. C. Or-
rick* and *Mr. J. E. Terrell, Jr.*, were on the brief.

MR. JUSTICE PECKHAM, after making the foregoing statement
of facts, delivered the opinion of the court.

Two grounds have been urged upon the court for reversing
this judgment and granting a new trial. One was that the
negligence of the railway company, if any, was that of a fel-
low-servant, for which it was not liable ; and (2) that there

was no evidence of the negligence of the foreman, in failing to discover the maul or hammer upon the bridge, sufficient to warrant the jury in finding a verdict for the plaintiff.

The right to maintain this action is founded upon a statute of Texas, the material sections of which read as follows:

"ART. 4560*g*. All persons engaged in the service of any person, receiver, or corporation, controlling or operating a railroad or street railway the line of which shall be situated in whole or in part in this State, who are entrusted by such person, receiver, or corporation with the authority of superintendence, control or command of other servants or employés of such person, receiver, or corporation, or with the authority to direct any other employé in the performance of any duty of such employé, are vice-principals of such person, receiver, or corporation, and are not fellow-servants with their co-employés.

"ART. 4560*h*. All persons who are engaged in the common service of such person, receiver, or corporation, controlling or operating a railroad or street railway, and who while so employed are in the same grade of employment and are doing the same character of work or service and are working together at the same time and place and at the same piece of work and to a common purpose, are follow-servants with each other. Employés who do not come within the provisions of this article shall not be considered fellow-servants." Sayles' Civil Statutes of Texas, 1897.

With reference to this statute, counsel for the defendant requested the court to charge the jury that—

"Although Welsh, the bridge foreman, may have been, in law, the representative of the company, yet, if they find that the act of examining the track, as the train might be approaching, for the purpose of ascertaining whether or not any obstruction was upon or near it, was a duty that may be expected to be performed by any one of the men, irrespective of his grade or rank; that is to say, by the foreman and men alike as occasion and circumstances may require; then, in any such event, the act or duty of Welsh in this respect was one which existed between fellow-servants, and defendant would not be liable for the negligent acts of Welsh in this respect, if any there were."

This charge was refused, and counsel for defendant excepted. The court did charge that the foreman of the bridgè gang was, under the evidence, the vice-principal of the defendant company. This charge was duly excepted to by defendant's counsel.

Defendant contends that if the negligence which caused the accident was the failure of the foreman to see the maul or hammer upon the bridge and to remove it, it was not the failure to perform a duty peculiar to him, the foreman, and specially imposed upon him as such foreman within the meaning of article 4560$g$, because it was a duty resting equally upon all the members of the bridge gang. The testimony in regard to this question leaves no doubt as to the duty of the foreman, although it also appeared that when a man was using tools and got through with them he was supposed to put them out of the way where a train would not strike them, and it was his business to do so. The evidence showed in addition that it was the special business of the foreman to see that the track was unobstructed on the bridge when a train was about to cross, and that although the men were supposed to see that the track was clear, it was the foreman's business to supervise them and see that the men left a clear track as the train came on. This was his duty as foreman, and not as fellow-workman, and the duty of care on the part of the workmen under him to keep the tools off the track when the train came on the bridge in no degree lessened the duty of the foreman to see that the men under him did as they ought, and that a free and unobstructed track was left for the train. In other words, it was the special duty of the foreman, as such, to see that the men performed their duty.

The negligent act of the foreman did not arise in the performance of the duty of a mere servant, although each servant was under an obligation to be careful, but it was the negligent act of the vice-principal in the performance of his duty as such. As it was the special duty of the foreman to see that the men performed their duty, his neglect so to do was the neglect of a duty which he owed not as fellow-servant but as vice-principal within the statute above cited.

Upon the second ground, we are of opinion that there was

evidence sufficient to go to the jury upon the question of the negligence of the foreman in failing to discover the maul upon the bridge immediately prior to the passage of the train. The foreman himself swears that he did look along the track just prior to the coming of the train, and that he did not see any obstruction on the track and did not see the spike maul in question. Whether he looked or not is under the evidence one of the material facts in the case. He says that he did, but we are of opinion that other facts proved in the case were of such a character as to make it proper to submit the question to the jury. The foreman's evidence was that of a somewhat interested witness. If the foreman did in fact neglect to perform his duty by looking over the track just prior to the coming of the train for the purpose of seeing that the bridge was clear of obstructions, it might be quite a serious matter for him in his future relations with the company. At any rate, no man is an absolutely disinterested witness where his testimony relates to the question of the performance or non-performance of a duty which he owed on account of the position which he occupied. It was, therefore, a question for the jury as to what measure of credence should be given to his testimony. Of course, the mere absence of evidence that the foreman did his duty would not be equivalent to evidence, direct or circumstantial, that he did not, and it rested with the plaintiff to show negligence of the foreman for which the defendant would be liable.

But there are certain facts proved in this case which we think rendered it necessary to submit the question of negligence to the jury, notwithstanding the testimony of the foreman. We have here a bridge not more than sixty or sixty-five feet long —an open top bridge, the surface of which was plain. The ties for the rails were the usual distance apart, and there was nothing on top of them except the rails themselves. The guard-rails were ten inches from the track and parallel with it, and they stood up about four inches above the ties. There was, therefore, nothing to obstruct or prevent the view of the length of the bridge by any one at either end and nothing to prevent the discovery of the maul if the glance of the individual were anything more than casual or formal. The maul could not

have been hidden between the track and the guard-rails so as not to be above the track, for if the maul were lower than the track, the train could not have hit it, as it is perfectly clear that anything lower than the surface of the track could not be struck by the train. So it would seem quite obvious that if any one in the position of the foreman had looked, it would have been possible for him to have discovered this maul if it were there. Was it there? Workmen had been using the maul on the bridge during the morning and a few moments, not more than ten or fifteen minutes, prior to the crossing of the train. The maul was struck by it and hurled with great force, sufficient to break the handle, against the plaintiff, who was standing near the east end of the bridge. The man who was known to have used the maul a few minutes before the arrival of the train says himself that he has no recollection of what he did with it. Now, whether the maul were left exactly on the bridge, or just off the bridge, and so near the track as to be struck by the passing train, it is not necessary to determine, because if it had been left in a position just off the bridge, and yet so near the track as to be struck by the train, the failure of the foreman to see it and have it removed was the same as if it had been on the bridge. The maul being left so that it was struck by the train and hurled against the plaintiff, the failure of the foreman to see it might have been found by the jury to be a negligent failure, and it being his duty to see that the track was kept clear for the passage of trains, that failure was a neglect which was the proximate cause of the injury. To be sure, it was negligence on the part of the servant who left the tool there in the first place, but after such negligence had occurred the duty of the foreman arose, and he had plenty of time in which to perform it, to overlook the bridge where the track was and see that there was no obstruction for the passing train, and his failure to look, or looking, to discover the obstruction, thus became the immediate and proximate cause of the injury which followed.

There is no other cause assignable for this injury than the fact that the train did strike the maul, and that fact is proved from the fact that it was thrown in the direction in which the train was going. Counsel for the defendant admits that the evidence

shows that fact, but he avers that it does not appear that the maul was in such a position as to convict the foreman of negligence in not discovering it, and as to that fact counsel insists that the negligence of the foreman is disproved by the uncontradicted testimony.

The facts already stated rendered it necessary, in our judgment, to submit the question to the jury as to the negligence of the foreman, even although he testified that he looked and did not discover any obstacle on the bridge.

These two are the propositions particularly argued before us. We do not see in them any ground for disturbing the verdict of the jury.

We have looked at the other exceptions taken in the course of the trial and are of opinion that they do not show any error requiring a reversal of the judgment, and it is, therefore,

*Affirmed.*