SOUTHERN KANSAS RY. CO. OF TEXAS et al. v. SHINN.

(Court of Civil Appeals of Texas. Amarillo. Jan. 18, 1913. On Motion for Rehearing, Feb. 22, 1913.)

1. MASTER AND SERVANT (§ 264*)—ACTIONS FOR INJURIES — EVIDENCE ADMISSIBLE UNDER PLEADINGS.

In a brakeman's action for injuries from being struck by overhanging telephone wires, where the complaint charged the excessive speed of the train as negligence, and also alleged, in anticipation of the defense of contributory negligence, which defendant subsequently pleaded, that, because of such speed, he could not see the wires and avoid being struck, evidence as to the speed of the train was admissible on the issue of contributory negligence, although the issue of negligence, based on the excessive speed, had become immaterial.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861-876; Dec. Dig. § 264.*]

2. APPEAL AND ERROR (§ 688*)—RECORD—REMARKS OF COUNSEL—OBJECTION—NECESSITY.

Where it appeared that plaintiff's counsel commented on an issue as to which there was no evidence, but it did not appear what language was used, or that any suggestion as to its impropriety or request for an instruction to disregard was made to the court, no error was shown.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2894-2896; Dec. Dig. § 688.*]

3. TRIAL (§ 120*)—REMARKS OF COUNSEL NOT SUPPORTED BY EVIDENCE.

While counsel may draw from the facts and evidence every legitimate inference deducible therefrom, an inference upon an issue pleaded, but not supported by the evidence, is not a legitimate inference and is improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 285-287; Dec. Dig. § 120.*]

4. MASTER AND SERVANT (§ 125*)—LIABILITY FOR INJURIES—ACT OF THIRD PARTY.

Where the sagging condition of overhanging telephone wires by which a railroad brakeman was injured, was due to the act of a stranger, the lapse of an hour and a half or two hours did not charge the company with notice of such condition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243-251; Dec. Dig. § 125.*]

5. MASTER AND SERVANT (§ 125*)—LIABILITY FOR INJURIES—ACT OF THIRD PARTY.

Where an unusual condition is created by the act of a stranger, an employer is not liable for injuries therefrom unless notice is shown either by some circumstance or by a sufficient length of time intervening.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243-251; Dec. Dig. § 125.*]

6. MASTER AND SERVANT (§ 125*)—LIABILITY FOR INJURIES—ACT OF THIRD PARTY.

That an unusual condition, by which an employé was injured, was caused by a third person does not relieve the employer of liability if, just before and at the time of the accident, another employé, in the discharge of a particular duty owed to the master, might or could have discovered the condition, and failed to do so.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243-251; Dec. Dig. § 125.*]

7. MASTER AND SERVANT (§ 286*)—ACTIONS FOR INJURIES—QUESTION FOR JURY.

In a brakeman's action for injuries, caused by sagging telephone wires across the right of way, evidence held to make a question for the jury as to the station agent's negligence in failing to observe the condition of the wires before signaling that the track was clear.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010-1050; Dec. Dig. § 286.*]

8. APPEAL AND ERROR (§ 1170*)—REVIEW—HARMLESS ERROR.

Rule 62a for Courts of Civil Appeals (149 S. W. x), providing that no judgment shall be reversed for an error of law in the course of the trial, unless the appellate court shall be of the opinion that it amounted to such a denial of appellant's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, changed the former rule that an appellate court should reverse, where an error plainly appeared, unless it affirmatively appeared that no injury resulted, and requires an affirmance unless the court is of opinion, upon consideration of the whole record, that appellant was injured.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540-4545; Dec. Dig. § 1170.*]

On Motion for Rehearing.

9. APPEAL AND ERROR (§ 882*)—REVIEW—INVITED ERROR.

In a brakeman's action for injuries, caused by sagging telephone wires across the right of way, the court charged that, if the railway company knew, or by the exercise of ordinary care could have known, of such obstruction, it was liable. The evidence was insufficient to raise the issue of actual knowledge. Defendant requested special charges, which were refused, that if the company did not know, and had no reason to presume, that the wires were cut or in a dangerous condition, to find for it; that plaintiff could not recover, unless the company had actual notice of the condition of the wire, or something had transpired which should have called its attention thereto; that the company could not be charged with negligence, unless it had actual or constructive notice of the condition; and that the burden was on plaintiff to show such actual or constructive notice. Held,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

that the charge as given, having been the same, in substance, as those requested, the error in submitting the question of actual knowledge was invited, and could not be complained of by defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

Appeal from District Court, Lipscomb County; B. M. Baker, Special Judge.

Action by J. E. Shinn against the Southern Kansas Railway Company of Texas and others.. Judgment for plaintiff, and defendants appeal. Affirmed.

H. E. Hoover, of Canadian, E. C. Gray and Adkins & Sewell, all of Higgins, and Terry, Cavin & Mills, of Galveston, for appellants. Gustavus & Jackson, of Amarillo, and W. M. Whitmire, of Dallas, for appellee.

HENDRICKS, J. Appellee Shinn, the plaintiff below, sued the appellant for damages alleged to have occurred on account of being struck by overhanging telephone wires across the track and right of way of the appellant railway company while he was in the discharge of his duties as head brakeman, standing upon the top of one of appellant's box cars in a train passing through the town of Higgins, also negativing, in his petition, contributory negligence on his part, and charging negligence in several different phases by appellant railway company. On the merits, the appellant railway company, after a general denial, pleaded contributory negligence, assumed risk, and specially, in substance, "that the wire or wires which caused the injuries to plaintiff were not the property of the defendants, and in no wise in their care, control, or management; that the same were cut or loosened without their knowledge and consent, and by a person for whose acts they were in no wise responsible; that the wires were strung across their right of way, through the town of Higgins, by the owner or owners of the wires along the streets and alleys of the town of Higgins, under a franchise granted by said town or city; that this act was under the exclusive control and management of the city government, and in no wise under the care, control, or management of the defendants."

[1] First. The appellant earnestly insists that the testimony of appellee and some of his witnesses, as to the speed of the train while passing through the town of Higgins on this occasion, was immaterial and prejudicial, and that the argument of counsel, in commenting upon the same before the jury, as an act of negligence, although without objection upon his part, was also prejudicial. Appellee seems to have alleged the speed of the train in two ways: First, as an act of negligence by the appellant; and, second, as negativing contributory negligence, alleging that, on account of the rapid rate of speed at which the train was moving, he was unable to observe the location of the overhanging wires and avoid being struck. It is true that the issue of negligence, based upon the excessive rate of speed alleged in the petition, upon the final development of the case, became an immaterial one; it was not submitted to the jury; and in the absence of any other testimony, without considering the adequacy of the allegations, it would have been error to have submitted it; however, upon the issue of contributory negligence, which appellee seems to have attempted to anticipate in his petition, and which was prominently pleaded by the appellant, the testimony was clearly admissible.

[2, 3] The bill of exceptions does show that plaintiff's counsel commented upon the speed of the train as an act of negligence in his argument to the jury, without any remonstrance, however, by defendant. Counsel have the right, of course, to draw from the facts and evidence every legitimate inference deducible therefrom. An inference upon an issue pleaded, but not supported by the evidence, strictly speaking, is not legitimate, and, abstractly considered, may be inappropriate; but this bill of exceptions does not show the language used, and does show affirmatively that no suggestion was made to the trial court as to its impropriety, if it were improper, and no request for an instruction, either oral or written, is shown to have been made to the judge to disregard the remarks complained of. Hence the error is not shown.

[4, 5] Second. Appellant contends that the evidence is insufficient to support the verdict. Independent of, and disconnected from, the issue as to the duty of the station agent to look down the track at the time the engineer whistled for the signals, discussed in the next paragraph, we agree with appellant that the evidence is insufficient to charge actual notice of the sagging condition of the overhanging telephone wires, or that the length of time intervening between the accident and the time the wires were loosened was a sufficient space of time to imply notice to the appellant that said wires had been lowered or were dangerous. The evidence conclusively shows that it was an independent act of a housemover, who cut some of the wires and loosened others several hundred feet away from the main track, creating the sagging condition of the same immediately over the main track, and of which act defendant had no notice for an hour and a half or two hours, is not sufficient time of itself, unaccompanied by any other facts, to put the railroad upon inquiry as to an overhead obstruction of this character. The poles were about 30 feet high, and the wires between them, being approximately from 26 to 29 feet in height, had been suspended over the right of way for several years; and the section foreman was over the track and under the wires that morning. An act of a

stranger, different from that of an employé in the pursuit of his master's business, creates an unusual condition; that which has been normal and usual is suddenly changed, and unless notice is shown, either by some circumstance or a sufficient length of time intervening, the previous normal condition would necessarily be presumed to continue. The test of anticipation or foresight of a typically prudent person, after the condition has changed (in this instance the sagging condition of the wires, brought about by an independent agent), might require less diligence, although the standard of ordinary care would remain the same. The wires were overhead and were an instrumentality of others, which, coupled with their previous permanency and lack of susceptibility of change, with only two hours at the outside in which to discover the condition by inspection, without actual notice of the same, forces us to such conclusion. Labatt says that: "The essence of such rulings is that the master cannot be expected, as a reasonably careful man, to supervise the business so closely or make such frequent inspections that he ought to discover the dangerous conditions within the given period." Volume 1, Master and Servant, pp. 281, 282. Also see the following authorities: Goodrich v. Kansas City, C. & S. Ry. Co., 152 Mo. 222, 53 S. W. 920; Murphy v. Great Northern Ry. Co., 68 Minn. 526, 71 N. W. 664; Nashville, C. & St. L. Ry. Co. v. Hays, 117 Tenn. 680, 99 S. W. 365.

[6] Third. However, where unusual conditions have been created by a third party, it is immaterial whose negligence produced the dangerous conditions. If, just before and at the time of the accident, a servant, in the discharge of a particular duty he owes the master, might or could have discovered such unusual conditions, and failed to do so, and the failure in this respect would create the further duty to take appropriate steps for the protection of the servant, the master would be liable, and that is the serious issue in this case. The pleadings of appellee are amply sufficient to cover this issue, and the solution of it is referred to the sufficiency of the evidence to support it.

[7] Fourth. In this discussion of the negligence of the appellant, and in considering the proximate cause of the injury, in the application to the facts, all the evidence in favor of appellee is of course resolved in his favor. When this particular train had reached the yards of appellant, about one-half mile from the station, going east, the engineer whistled for signals, and it was the duty of the station agent, or some one under him, to manipulate a lever inside the station, situated in a bay window projecting over the platform, the operation of which drops or raises a signal board, indicating whether to stop or proceed, as the occasion demands, and in this instance the "proceed" signal was given by the dropping of one of the arms or board,

and the engineer answered, with appropriate whistles, to let the trainmen know that a "proceed" signal was given, and went on through on the main track; and, when the train was going through, the appellee was upon the top of a box car, as it was his duty in going by stations. The main track, on which this train was running, was immediately next to the station; and near the bay window, and inside of same, the lever was situated, giving the operator of the lever, at the time of its manipulation and before the train arrived at the station, a sweep of vision east and west upon the main track and up and down the right of way, so that the man operating the lever could see the bunch of wires about 300 feet away and east of the station.

In this record the station agent, and the witness for defendant, testified as follows: "The lever that operates the board is on that desk that sits in the bay window. When an incoming train whistles for the board, (if) the man that is sitting there operating the board does his duty, he would look and see if there is a *clear right of way*, I suppose, but I do not know as it is incumbent to do that. The engineer does not whistle to know if there is a clear track; he whistles to know if we have orders for him. The literal meaning in the book is, when we drop the board, *that is a clear track.*" (The emphasis is ours.) While it may be the agent hesitates in his testimony, and exhibits an apparent contradiction in his statements, the same may be resolved against the appellant, and is sufficient to go to the jury on the question of the duty of the operator of the lever to look in each direction for "a clear right of way." Harris, the manager of the telephone company, also witness for the defendant, testified as follows: "The wire running across that 100 feet was insulated. That would not make any difference in the weight of the wire, only in the size. I do not think it would make it any heavier. * * * It makes it larger in bulk; yes, sir. Take 20 wires like these were, they could be seen from the depot in a bulk; yes, sir. They cross in two bunches, and, in the condition they were in, you could readily see them from the depot, I would think." Main street, crossing the right of way, was between the place of the accident and the bay window and about 100 feet from the depot, and Martin Madson, a witness for plaintiff, said, "You could see those wires passing across Main street from the depot, and they could be seen from the depot." The distance from the lowest wire to the track was about 24½ feet, while the same was in a normal condition; and the wires were 20 in number, in two bunches of 10 each, on the lower and upper cross arms of the poles. Patton, defendant's witness, said that one of the men, who was assisting in moving the house, loosened some of the wires and laid them on the ground, and the upper bunch was loosened and raised up so

that the house could be moved under them. This was some distance from the place where the wires sagged; and, although the evidence is not clear, it is susceptible of the construction, upon the whole testimony, that some of the wires were sagged in a bunch over the main track at the time the accident occurred, considering their loosened condition during the intervening period.

It is also to be inferred, and we so find from the testimony of the operator of the lever, that he did not look out of the window and down the track at the time the signals were given and when the train was passing through, but operated the lever and dropped the signal board for the engineer to go through without directing his vision in either direction. If he had looked and had seen the wires in a sagging condition, he, as a prudent man, applying the standard of duty under the circumstances, should have, of course, never given the "proceed" signal, but should have exhibited the "stop" signal. It is true vision is mental as well as physical; and this record presents a subject of considerable thought and troublesome solution, whether on account of the unusual conditions of those wires, produced by a stranger, with no circumstances in this record to attract the operator of the lever to their actual condition at any time, if he had looked, would he as an ordinarily prudent man, and, sweeping the right of way with his vision, have seen the wires within the time to be consumed in the discharge of his duty, or would he have seen only the main track? The jury have solved it against the appellant; and according to the rule advanced in the leading case of Lee v. Railway Company, 89 Tex. 583, 36 S. W. 63, we are unable to say that they did it on insufficient testimony: "Negligence, whether of the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question; in other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to a conclusion to be drawn from it." Circuit Judge Shelby in the case of Texas & Pacific Railway Company v. Carlin, 111 Fed. 781, 49 C. C. A. 609, 60 L. R. A. 464 (affirmed by the Supreme Court of the United States 189 U. S. 354, 23 Sup. Ct. 585, 47 L. Ed. 849), in a well-considered opinion, where an unusual accident occurred, said: "It must be conceded that the injury for which the action is brought occurred in an extraordinary manner. Just such an occurrence was not to be anticipated. The defendant requested the trial judge to instruct the jury that, although they may find that the foreman failed to discover the maul, 'yet, if you believe from the evidence that the result which followed from his failure to discover it was not such result as ought to have been foreseen in the light of the attending circumstances, then in such event the failure of the foreman to discover the proximity of the hammer would not be such negligence as would make the defendant liable, and you must find for the defendant.' The court did not err in refusing to adopt this view of the case. It may be true that the accident in its extraordinary form, with the peculiar circumstances, could not have been expected to happen from the maul having been left on the bridge near the rail; yet the act in permitting it to remain there was none the less negligent, for it threatened danger in many directions. It was liable to produce familiar results, which would cause serious injury. The fact that it happened to cause the injury in a manner so unusual that it was not to be expected cannot prevent the act from being negligent, when it was likely to cause injury in a way that might be foreseen. It may be true that the negligence in this case produced an effect not before observed, the circumstances of which could not have been anticipated; but, if it was negligence likely to produce other and familiar injuries, the peculiarity of the accident does not prevent liability. Doyle v. Chicago, St. P. & K. C. Ry. Co., 77 Iowa, 607, 42 N. W. 555, 4 L. R. A. 420."

[8] Fifth. The appellant in this case assigns error upon the fifth paragraph of the main charge of the court, a part of which, pertinent to the question, we quote as follows: "Now, if you are satisfied, from a preponderance of the evidence, that the telephone wires described in plaintiff's pleadings were sagging down across defendant's right of way, as alleged by the plaintiff, so as to constitute an obstruction over said right of way, unnecessarily endangering the life of plaintiff, and that the defendant knew, or by the exercise of ordinary care could have known, of the existence of such obstructions across said right of way, and by the exercise of such care could have prevented plaintiff from being struck by said wires and injured," etc.—appellant contending that that part of the charge addressing the issue to the jury, if "the defendants knew" of the obstruction across said right of way, was a submission, without any evidence whatever to support it. We are inclined to believe, from a consideration of the whole record, as indicated in a prior part of this opinion, there was no evidence in any way tending to show actual knowledge by appellant of the sagging condition of the wires. However, we are not disposed to say that it was such error as would produce a reversal of this cause, under all the circumstances in this record; and without entering into a discussion as to whether or not, under the prior decisions of the courts of this state, it would be a positive error, requiring a reversal, or

harmless, still, upon a consideration of the whole record, even if the suggestion of the trial court to the jury in said charge would, under the prior decisions of this state, have been considered as error, justifying a reversal of this cause, still under the new rule 62a (149 S. W. x), promulgated by the Supreme Court, and applying the same to this record, we are constrained to overrule the assignment. The old rule seems to be substantially that, where an error plainly appears on appeal, it is the duty of the appellate court to reverse the judgment, unless, from a consideration of the entire record, it affirmatively appears that no injury to the complaining party resulted. We quote that part of rule 62a appropriate to this discussion, which we think reverses this rule when applicable: "No judgment shall be reversed on appeal, and a new trial ordered in any cause, on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the cause" —omitting the remaining portion of the rule not germane to this subject.

Without attempting a theoretical disquisition as to the character of error that the new rule would reject, and the character of right it affected, and preventing a reversal of a case, we are inclined to think that this kind of a case, and this kind of an error, if any has been committed, is one that is comprehended within the spirit of the new rule announced. In the interpretation of statutes, the old law, the mischief of the same, and the remedy to be applied are always to be taken into consideration as to the meaning and spirit of the new law correcting the old. Evidently the Supreme Court, impressed by the reversal of cases on technical errors, and suggested by the experience of trials in the administration of justice, that the slip of the court did not influence the jury or in reality enter into their consideration in arriving at a verdict, caused the promulgation of said rule, and the inspiration and intent being to remedy such a defect in our system of trial procedure, where a substantial right has not been denied. If, from a consideration of the whole record, we are of opinion that the error complained of did not amount to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, if we understand the rule correctly and the intention of it, it is the duty of this court to affirm the case.

We are not of opinion that this error, from a consideration of this whole record, amounted to a denial of the rights of this railway company to such an extent as was reasonably calculated and probably did cause the rendition of an improper verdict and judgment in this case, and hence, upon the whole record, we are constrained to affirm this case, overruling all assignments, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

[9] The appellant, in his motion for rehearing, additional to other grounds, strenuously insists that the court was in error in not sustaining the sixteenth assignment of error, which called into question the following paragraph of the main charge of the court: "Now, if you are satisfied, from a preponderance of the evidence, that the telephone wires described in the pleadings were sagging down across defendant's right of way, as alleged by the plaintiff, so as to constitute an obstruction over said right of way, unnecessarily endangering the life of plaintiff, and that the defendants knew, or by the exercise of ordinary care could have known, of the existence of such obstructions across said right of way, and by the exercise of such care could have prevented plaintiff from being struck by said wires and injured," etc. —and further asserting that we were in error in applying rule 62a, if such a charge were erroneous. Appellant's proposition, as was stated in our original opinion, is leveled at that part of the charge addressing the issue to the jury, "if the defendants knew" of the obstruction across the right of way, and was a submission to the jury of an issue, without any evidence whatever to support it. While we held, in our former opinion, that the evidence was sufficient to submit to the jury the issue of the exercise of ordinary care to discover the sagging condition of the wires over the main track, we held that the testimony was insufficient to raise the issue of actual knowledge, and further held, applying the rule, that the error, if any had been committed, upon a consideration of the whole record, was insufficient to reverse the case upon that particular question. Of course, in no event would this court apply the rule where a plain and palpable error had been committed in violation of a statute affecting the substantive rights of a litigant; and, where such a condition is presented, the fundamental law necessarily would overcome the rule. Schuette v. Bishop, decided by us January 25, 1913.

Aside from the rule, which we think is applicable, it will be noticed that, in considering this whole record with reference to this particular matter, the appellant requested special charges, parts of which we will quote as appropriate in sustaining the ruling of the court. In special charge No. 3, requested by the appellant, we find this language: "That in order to warrant a finding that negligence, as an act or as an omission, the same not amounting to wanton wrong, is the proximate cause of any injury, it must

appear that the injury was the natural consequence of the negligence or the wrongful act; that the danger ought to have been seen in the light of the attending circumstances; and you are therefore charged, if you find and believe from the evidence in this case that the wires, which caused the injury, were strung across defendant's right of way, that the same were cut by an independent agency, and that the defendants, in the light of the testimony, *did not know that the wires were cut*, and in the light of the attending circumstances, as shown by the evidence, had no reason to presume that they were cut or in a dangerous condition, then and in that event, should you so find, you are charged to find for the defendant." We extract this language from defendant's special charge No. 5: "If, therefore, you find and believe from the evidence that the wire was loosened by the housemover, and was otherwise safe, and but for which loosening the accident would not have happened, then you are charged, if you so find, that the plaintiff cannot recover, and your verdict should be for the defendants, *unless you further find that they had actual notice of the condition of the wire*, or something had transpired which, in the ordinary course of affairs, should have called their attention to its condition, a sufficient time before the accident, to have enabled them to have prevented the accident, and as to this burden is upon the plaintiff, because you are charged that such cannot be presumed." We excerpt this language from defendant's special charge No. 10: "They [meaning the defendants] cannot be charged with negligence in regard to the same [meaning the conditions which caused the injury], unless they had *actual* or constructive notice of the dangerous condition, at least long enough before the injury was inflicted to have prevented it, and you are charged that the burden is upon the plaintiff to show *such actual* or constructive notice; and, unless he has done so, your verdict should be for the defendant."

Under the case of International & Great Northern Railroad Company v. Sein, 89 Tex. 63, 33 S. W. 216, 558, and other decisions of the courts of this state on the proposition of invited error, we are inclined to think that the numerous submissions of special charges, although refused, submitting the proposition, negatively and affirmatively embodied by the trial court in the fifth paragraph of his main charge, were of such a character and addressed to the attention of the trial court in such a way that the defendant, in the case on the trial thereof, invited error, if any was committed. It is true that the defendant is requesting the court to affirmatively charge its theory on the defense in this case; but the language specially embodied in charge No. 5, addressed to the attention of the court, although the court's charge is in different language, is calculated to induce a trial court into the belief that there was sufficient evidence to charge actual notice of the condition of the wires, as it embodies the substantive elements in another form of the charge complained of. It is true that the first special charge in this record was the converse negatively stated of the proposition of law complained of; but taking it, especially in connection with charge No. 5, which proposition, in substance, is the same as in the main charge, complained of, indicates an insistence of the very matter. The doctrine of invited error is based upon estoppel; and as Chief Justice Gaines said in the case of Gresham v. Harcourt, 93 Tex. 157, 53 S. W. 1021, "for example, if a special instruction be requested, and the court give the instruction, either in the form requested or in substance, the giving of the charge cannot be successfully urged as error."

The motion for rehearing will be overruled.