## EDWARDS–BUTCHER TRANSP. CO. v. TRAHAN.

### No. 3503.

Court of Civil Appeals of Texas. El Paso.
April 8, 1937.

Rehearing Denied April 29, 1937.

John R. Brown, of Houston, of counsel, Royston & Rayzor, of Houston, for plaintiff in error.

T. G. Schirmeyer, C. P. Kimpel, and Ewing Werlein, all of Houston, for defendant in error.

WALTHALL, Justice.

The parties will be referred to as plaintiff and defendants, as in the trial court.

We adopt substantially the statement of the nature and result of the case as in defendants' brief, and will add thereto such additional facts as we find in the record and necessary to an understanding of the proposition.

This suit was instituted by John Trahan in the district court of Harris county, Eightieth judicial district of Texas, against C. W. Edwards, M. C. Butcher, and J. W. Arthur, individually, and as partners doing business under the partnership name Edwards-Butcher Transportation Company to

recover damages and maintenance, wages and cure, for an alleged injury received by him on or about September 15, 1934, while working aboard the barge belonging to the defendants and then lying moored in the Houston Ship Channel. The plaintiff proceeded to trial on his third amended original petition in which, in substance, it was alleged that the plaintiff was employed as a seaman on the tugboat Houtex and as a deckhand or bargee on the barge Harrisburg at the rate of 40 cents an hour on September 13, 1934; after completing certain work which he was instructed to do, he was then instructed to assist in trimming the barge so that her after end would be down permitting the residue of oil in the barge to drain aft; that the second assistant engineer of the tug who was then on the barge in charge of the work instructed the plaintiff to assist moving a heavy flexible metal hose some forty feet long weighing about 900 lbs. with an outside diameter of about eight inches across the deck of the barge in order to rig it to a pump and put one end of the hose down into and through the hatch of the air compartment on the after end of the barge; that while attempting to move the hose aft and to put one end of it down into the air hatch it was necessary to lift the free end of the hose upward and force one end down into the hatch and that as the plaintiff was lifting upward on the hose and assisting in attempting to push it down into the air hatch a bight or loop formed in the hose causing the hose to spring out and knocking the plaintiff overboard. Negligence against the defendants was charged for their failure to supply only two men to do the work, a failure to warn, use of a metal hose instead of a water hose, failure to equip the barge with life lines, guards, or railings along the side and after end of the barge, and permitting the plaintiff to work in a dangerous and unsafe place where he was exposed to the hazards of falling over the side of the barge around which were no life lines, guards, or rails. These faults were alleged to have been the proximate cause of his injuries resulting in damage and for which he also asks for maintenance, wages, and cure under the Maritime Law.

By paragraph 15 of the petition the plaintiff declares that his action is brought pursuant to the Jones Act, title 46, U.S.C. § 688 (46 U.S.C.A. § 688), being the act of Congress extending to seamen the benefit of all statutes of the United States modifying or extending the right and remedy for personal injuries received by railway employees.

The defendants in their amended answer demurred to the petition and, in addition to a general denial, alleged in substance that the barge Harrisburg at the time of the alleged injury was made fast alongside a sunken barge near Deepwater Refinery in the Houston Ship Channel in such a manner adjacent to a wood pier or wharf leading to the shore so that there was at all times a convenient and safe means of going to and from the shore and barge while the plaintiff was working thereon; and that if there were circumstances or conditions, either as to employees or appliances, deemed inadequate or negligent by the plaintiff, he had a free and unhampered opportunity to leave the barge when he saw fit, but notwithstanding this opportunity he freely continued working without protest until the accident occurred; that the risk of falling overboard or being thrown overboard by using a metal flexible hose was a risk reasonably incidental to the performance of his work aboard the barge and at all events was such an obvious risk that it was known to him, or if not known to him, then in the exercise of ordinary prudence it should have been known to him; and that even if defendants were guilty of negligence in any of the particulars alleged, which was denied, then at all events the nature of their negligent acts were such that the plaintiff appreciated the risk and danger of working in the face of such defects, or they were of such an obvious and patent nature that the plaintiff must be deemed to have appreciated the risk of such conditions which, in either event, would, by reason of assumption of risk, bar any recovery by the plaintiff. In addition the defendants charged that the plaintiff was negligent, causing or contributing to cause the injury in several respects including failure to keep lookouts, failure to lash down the metal hose, and failure to stand on the inboard side of the metal hose so that if it sprung outward he would not be thrown overboard.

The cause proceeded to trial before a jury in the Eightieth district court on November 13, 1935, and, after both sides had rested, the defendants moved for an instructed verdict which was overruled by the court. The court submitted the case to the jury on special issues, in which the jury found; in substance, that the defendants failed to furnish a sufficient number of men to handle the metal hose, which was negligence proximately causing plaintiff's in-

juries; that the plaintiff was handling the metal hose at the time of the accident under the orders of Farmer, second assistant engineer; that the injury was not the result of an unavoidable accident; that the plaintiff was not negligent in failing to keep a lookout for bends in the hose, in failing to lash down the metal hose to the barge, failing to carry the hose so that it would be on his outboard side, in failing to demand that additional help be furnished; that the plaintiff was not aware of the risk of moving a flexible metal hose without lashing it down to the barge, and such risk was not obvious to the plaintiff; nor was he aware of the risk of carrying the hose so as to be on the outboard side, nor was such risk obvious to him. Damages were found at $4,000 and the court found in the sum of $820 for maintenance and cure.

Defendants filed a motion for judgment notwithstanding the verdict which was, after notice to opposing counsel, presented to the court and overruled; and thereafter judgment for the plaintiff in the sum of $4,820 was rendered by the court. Defendants filed their original motion for new trial and within due time their amended motion for new trial, which was, in due time, presented to the court and overruled.

From the judgment rendered, defendant prosecutes this appeal by writ of error.

### Opinion.

This action is brought under the Jones Act, title 46, U.S.C. § 688 (46 U.S.C.A. § 688), being the Act of Congress extending to seamen the benefit of all statutes of the United States modifying or extending the right and remedy for personal injuries received by railway employees.

The case is governed by the act and the applicable principles of common law as established and applied in federal courts.

Defendant submits that under the Jones Act it is incumbent upon the plaintiff to prove that a person of ordinary prudence in the exercise of care would have reasonably foreseen that the injury to plaintiff, or similar injury, would occur; that where the foreseeableness of likely injury is an element of negligence or of proximate cause, it is incumbent upon the plaintiff in a suit under the Jones Act to prove that a person of ordinary prudence in the exercise of ordinary care would have reasonably foreseen that the injury to plaintiff, or a similar injury, would occur, and that because of insufficient evidence under either of the propositions, either as to the number of men customarily handling the metal hose under the conditions, or as to the happening of the accident, the issue of negligence proximately causing the injury to plaintiff was not shown, and the court erred in entering judgment.

The evidence shows that plaintiff Trahan was instructed to assist in trimming the barge Harrisburg so that her after end would be down, thus permitting the residue of oil and other liquid in the holds of the barge to drain aft so that she could be pumped clean. To do this work plaintiff, in connection with another man, was directed to use a flexible metal hose about forty feet long with an outside diameter of eight to ten inches and weighing about 700 pounds which had to be made fast to a pump in the pumphouse, and the free end placed down in the air compartment, through a small hatch, at the after end of the barge. While other grounds of negligence were specified in plaintiff's petition, such as failure to warn of danger, failure to provide a safe place to work, failure to provide proper appliances to equip the barge with lifelines or rails around the after end of the barge, the court submitted to the jury the issue of actionable negligence of "failure to furnish a sufficient number of men to handle the metal hose in question with reasonable safety to the men in the work of connecting the metal hose with the pump and air compartment on the occasion in question."

Trahan testified: "Mr. Farmer (the man directing the handling of the hose and assisting in doing so) said: 'Take this end back to the air compartment,' and he got hold of the flange and I got back here, and I could not get on the inside. I got on the outside and I held the hose up four or five feet and we started and he drug it down there and he said, 'you hold it up and I will work it in,' and he had to hold this hose up that high, and when he got there he had to put all of his weight on this hose to get it in this hatch, it is low, about seven inches high, and he had to give it a yank, and something happened, and knocked me overboard between the two barges."

Defendant's counsel in their brief describe the barge Harrisburg, upon which plaintiff Trahan was working at the time of his injury, as a relatively new steel barge constructed and used for the purpose of transporting crude oil and other petroleum products. Her steel deck was flat.

without any guard rails or lines strung around her sides. Toward the aft end of the barge there was a raised pumphouse on the deck, and on the port (left) side of the pumphouse and between the port side of the barge there was a cargo hatch from two to four feet high. Between the outboard edge of this cargo hatch and the port side of the barge there was a space of about four or five feet, as estimated by the witnesses. Aft the pumphouse and also aft the cargo hatch, there was, nearer to the after end of the barge and on the port side, a circular hatch with a coaming of about four or six inches. To a land man this hatch to the air compartment was substantially like a manhole and cover, the top of which was raised about four to six inches above level of the surrounding deck. This round hatch cover to the air compartment was about eighteen inches in diameter and between its outboard side and the port side of the barge there was a space of approximately eighteen inches.

The Merchant Marine Act of 1920 (section 33), referred to as the Jones Act, Title 46, U.S.C. § 688 (46 U.S.C.A. § 688), provides: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

The rest of section 688 applies in case of death of the seaman.

The question presented, as we understand it, is: Is the evidence sufficient to justify the submission to the jury of the first issue submitted, and is the evidence sufficient to sustain the jury's findings? The issues submitted were whether the plaintiffs here (defendants below) failed to furnish a sufficient number of men to handle the metal hose in question with reasonable safety to the men in the work of connecting the metal hose with the pump and air compartment on the occasion in question, and, if yes, was such failure negligence and proximate cause of Trahan's injury.

We see no difference between the Merchant Maritime Act quoted above and the application made of it by the federal courts, and the federal courts in personal injury cases not under the Merchant Marine Act, and our state courts, in determining the issues of negligence and proximate cause in personal injury cases, and in respect to the question presented here, whether the injured party must allege and prove that the injury sustained was foreseeable, in order to make out a case of negligence at common law. After stating in detail the work Trahan was directed to do, and the character of the work, the petition alleged, in substance, that in the performance of the work it was defendants' duty to employ the number of men necessary for the safe performance of the work required, which defendant negligently and carelessly failed to do, and which was the proximate cause of plaintiff's injuries and damages; that defendant knew or by reasonable inspection could have known that two men were not sufficient to perform the required work of trimming the barge Harrisburg with safety, and defendants were negligent in not supplying more men to assist in performing such work.

■ It was not necessary, we think, from the character of the negligence alleged for the evidence to show more in order to tender the ultimate issue of facts of negligence and proximate cause, than that defendants could or should foresee or anticipate that the injury to Trahan, or some like injury, would result.

Negligence can only be predicated upon knowledge actual or constructive. Ebersole v. Sapp (Tex.Com.App.) 208 S.W. 156; Comanche Duke Oil Co. v. Texas Pacific Coal & Oil Co. (Tex.Com.App.) 298 S.W. 554; 30 Tex.Jur. p. 662, par. 17 and note.

The same rule is announced in Hill v. Winsor, 118 Mass. 251, in which it is said: "It is not necessary that the consequences of the negligent act of the defendants should be foreseen by the defendants. It is not necessary that either the plaintiff or the defendants should be able to foresee the consequences of the negligence of the defendants in order to make the defendants liable."

To the same effect is Schlemmer v. Buffalo, R. & P. R. Co., 205 U.S. 1, 27 S.Ct. 407, 409, 51 L.Ed. 681, by the U. S. Supreme Court, in which it is said: "Negligence consists in conduct which common experience or the special knowledge of the actor shows to be so likely to produce the result complained of, under the circumstances known to the actor, that he is held answerable for that result, although it was not certain, intended, or foreseen."

Texas & Pacific Ry. Co. v. Carlin, 189 U.S. 354, 23 S.Ct. 585, 47 L.Ed. 849; Id,

(C.C.A.) 111 F. 777, 60 L.R.A 462; Foster v. Chicago, etc., Railway Co., 127 Iowa, 84, 102 N.W. 422, 424, 4 Ann.Cas. 150, in which it is said: "Doubtless the particular situation might not have been foreseen, but this was not essential to making out a charge of negligence."

In Houston Chronicle Pub. Co. v. Lemmon (Tex.Civ.App.) 193 S.W. 347, 349, it is said: "It has never been held, and it is not the law, that a defendant must have anticipated the precise and exact injury or precise person receiving the injury, but it is sufficient if he ought to have anticipated that the act causing the injury was calculated or likely to do some injury to some person."

■ Without quoting the evidence here, it is sufficient to justify the submission of the issue to the jury whether defendants failed to furnish a sufficient number of men to handle the metal hose with reasonable safety to the men in the matter about which the inquiry is made.

■ Defendants pleaded that Trahan assumed the risk of the injuries he alleged he sustained, and complain that the court refused to submit that issue to the jury.

In April, 1936, the United States Supreme Court, in The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075, and in Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082, construing the Jones Act, settled the question presented against defendants' contention. The cases are lengthy, and we can only refer to them.

■ Plaintiff sued for maintenance. We understand from the record that the parties stipulated and agreed that the reasonable and customary cost of maintenance was and is $2 per day during the period of Trahan's recovery; it was not necessary to submit the issue to the jury, it was simply a matter of calculation from the evidence as to the time, which the court made.

We have concluded that defendants' objections to the court's special charge is without merit, submitting to the jury the issue of what sum of money, if any, the jury would find to be fair and adequate compensation to Trahan for the alleged injuries suffered by him on the occasion in question. The objection made is that undue emphasis was placed on the element of physical manual labor and the income therefrom.

■ · The court was not in error in admitting in evidence over objection a "mas-ter's certificate of service of sick or injured seaman," signed by one of the masters of the tug Houtex (the mother vessel of the barge Harrisburg), stating, by its terms, that Trahan had been employed on board in the care, preservation, or navigation, or in the service on board of those so employed, of the tug Houtex from May 16, 1933, to October 8, 1934.

Finding no reversible error, the case is affirmed.

Affirmed.