## ANDERSON v. BALTIMORE & O. R. CO.
### No. 301.

Circuit Court of Appeals, Second Circuit.
May 9, 1938.

Harold R. Oakes, of New York City (Robert Schwebel, of New York City, on the brief), for appellant.

Fearey, Allen, Coleman & Johnston, o· New York City (Morton L. Fearey, William Paul Allen, and Paul R. Brown, all of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

David Anderson, a fireman employed on an engine of the defendant railroad, met his death on July 25, 1935, while engaged in interstate commerce. This action was brought by his executrix on the theory that his death resulted from a violation of the Boiler Inspection Act, § 2, 45 U.S.C. A. § 23, and rule 120 of the Interstate Commerce Commission promulgated thereunder requiring locomotives to be equipped with proper sanding apparatus, which must be maintained in suitable condition and tested before each trip. The first trial resulted in a directed verdict and judgment for the defendant, which was reversed on appeal to this court. Anderson v. Baltimore & O. R. Co., 89 F.2d 629; certiorari denied 302 U.S. 696, 58 S.Ct. 14, 82 L.Ed. ——. On the second trial the jury found a verdict for the plaintiff in the sum of $12,000. From the judgment entered thereon the defendant has appealed.

Anderson was killed by a train on an adjacent track while he was standing beside his engine for the purpose of ascertaining why its sanding apparatus had failed to function and of trying to make it work by tapping the pipes with a pick. At least, so the jury might find from the evidence. At the first trial there was little description of the sanding apparatus and no explanation of why it failed. We held on the former appeal that failure of the apparatus, in the absence of explanation, made a prima facie case of violation of the Boiler Inspection Act and rule 120 promulgated thereunder. In the second trial the defendant presented evidence describing the apparatus in detail and tending to prove that weather conditions such as existed on the day of the accident could, and did, cause the pipes to become clogged with wet sand although the apparatus was in perfect order. On the present appeal the appellant's main contention is that any inference of defect arising from failure of the "sanders" to function has been so completely met and overcome that judgment for the plaintiff should not be allowed to stand. This requires an examination of the evidence.

The pusher engine upon which Anderson was employed as fireman was a Mallet Compound engine equipped with Leach sanders. Above the boiler are two watertight sand boxes, each holding 30 to 50 gallons of dry sand. Joined to each box are two "traps," each trap serving a pipe on one side of the engine to discharge sand to the rail just in front of a set of drivers. The "trap" is divided into two compartments by a bridge. The sand flows by gravity into one compartment and is supposed to rest there until agitated by the injection of compressed air through a nozzle in the side of that compartment, the air being controlled by the engineer through a valve in the cab of the engine. When the valve is opened some sand is blown over the bridge into the other compartment, with which the discharge pipe is connected, and slides down to the rail. There is some uncertainty in the testimony whether the sand falls wholly by gravity or whether the compressed air sets up some downward pressure in the discharge pipe. We think the jury might find that there is some slight downward pressure; several witnesses said that if there was too much air pressure the sand would be blown off the rails. The discharge pipe has an inside diameter of one and a quarter inches, and a large washer was mounted on the outside about two inches from the bottom to serve as a shoulder to prevent water running to the open end of the pipe in rainy weather. There was testimony that conditions of moisture may cause wet sand to clog the end of the pipe, in which case all that is needed is to tap it out with a hammer. There was also testimony that the sanders may fail because the nozzle in the trap becomes clogged; in that event no sand is blown over the bridge and it is necessary to open the trap and clear the nozzle with a wire.

Cobb, the engineer, testified that he tested the sanders at D. C. Tower before the train started and found them working properly; that he used them to start the

798

train and not at all thereafter until he reached the grade at Stanley, thirty minutes later. When he opened the valves at Stanley, although the gauge showed sufficient air pressure, it at once became apparent from the spinning of the drivers that the sanders were not functioning properly, and about a mile beyond the train stalled. Cobb testified that he then got down from his engine and "tapped out a little wet sand in the bottom of both sand pipes on the right side"; he then crossed over to the left side, saw Anderson's body, and, after caring for Anderson, tapped the two pipes on the left side with a similar result. The plaintiff makes much of the fact that Cobb did not expressly state that the "little wet sand" was followed by dry sand, as would necessarily be true if the failure of the sanders was caused solely by clogging at the end of the pipe since the air valves had been left open; but Cobb's omission cannot be deemed equivalent to testimony that dry sand did not follow in view of his statement that thereafter all four pipes functioned properly. That dry sand followed was assumed in the hypothetical question put to the expert witnesses, and no objection was raised by the plaintiff to this assumption. Cobb also testified that it was not very unusual for the pipes to become clogged with wet sand during a light rain. Other engineers of long experience, several of them not connected with the defendant, corroborated this statement and expressed the opinion that the failure of the sanders on the occasion in question was due to weather conditions causing the sand to clog the end of the pipes, and was not due to any mechanical defect in the apparatus or any insufficiency of air pressure. In rebuttal the plaintiff called Shire, a fireman and engineer of long experience, who expressed the opinion that if sand, air, and pipes are in perfect condition weather conditions will not cause them to become clogged. He believed that the engine had failed because there was "insufficient pressure there to carry your sand through the pipe."

Although upon the printed record Shire's testimony is less persuasive than that of the defendant's witnesses, the weight to be accorded it was for the jury. We cannot accept the appellant's contention that there is no more than a scintilla of evidence to support the plaintiff's case. The sufficiency of the defendant's explana-

tion of the failure of the sanders depends upon the truthfulness of Cobb's testimony concerning the test he made before the train started, the sufficiency of the air pressure when he opened the valves at Stanley, and what he did to get the apparatus to function properly after the train stalled. He was an interested witness and what measure of credence should be given to his testimony was a jury question. Texas & Pac. R. Co. v. Carlin, 189 U.S. 354, 361, 23 S.Ct. 585, 47 L.Ed. 849; Volkmar v. Manhattan R. Co., 134 N.Y. 418, 422, 31 N.E. 870, 30 Am.St.Rep. 678. Acceptance or rejection of the opinions of the expert witnesses was also for the jury. The Conqueror, 166 U.S. 110, 131, 17 S.Ct. 510, 41 L.Ed. 937; Dayton Power & Light Co. v. Commission, 292 U.S. 290, 299, 54 S.Ct. 647, 78 L.Ed. 1267. Cobb testified that he did not think he was getting any sand through the pipes after leaving Stanley. It is difficult to understand how the wet sand plugs could have formed between the starting of the train and its arrival at Stanley, for during that half hour the sanders had not been used at all and no sand should have been coming through the pipes. The failure of the apparatus gave rise to an inference of some defect, and whether that inference was overcome by the defendant's explanation was a question for the jury on all the evidence. Lehigh Valley R. Co. v. Ciechowski, 2 Cir., 10 F.2d 82, 84. See, also, Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas.1914D, 905.

The appellant argues that the sole proximate cause of Anderson's death was his own negligence and his violation of a specific instruction given him by the engineer. It is unnecessary to repeat what we said on the subject of proximate cause on the prior appeal. As to the alleged instruction, the jury may well have thought Cobb's conversation with Anderson was of the nature of advice rather than a specific order. On his deposition Cobb said: "I told him not to bother with it, to leave it until we stop." On the trial Cobb testified to words which appear more definitely to be an order; but the jury may have accepted Cobb's first version of the conversation and may have found that the train had practically come to a stop before Anderson left the engine.

Only one exception was taken to the charge of the court, and that was based

on a ground different from that now urged. We think the charge as a whole was entirely correct and adequate. Nor do we find in refusal of requested charges or in rulings on evidence any substantial error. Accordingly, the judgment is affirmed.