## PERE MARQUETTE RY. CO. v. HASKINS.
### No. 6111.

Circuit Court of Appeals, Sixth Circuit.
Jan. 17, 1933.

P. O. Strawhecker, of Grand Rapids, Mich. (W. K. Williams and John C. Shields, both of Detroit, Mich., and Smith, Searl & Strawhecker, of Grand Rapids, Mich., on the brief), for appellant.

J. M. Dunham, of Grand Rapids, Mich. (Dunham, Taylor & Allaben, Linsey, Shivel & Phelps, L. H. Cully, and John H. Vander Wal, all of Grand Rapids, Mich., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

Haskins was an engineer on a regular passenger train operating between Grand Rapids and New Buffalo, Mich. The track of the railroad company between these points was equipped with an automatic block signal system. On the day Haskins was injured, he stopped his train a short distance south of a small station, Vine, in obedience to a stop signal, and backed up to a telephone booth, where the conductor telephoned the dispatcher at Grand Rapids and received an order authorizing him to make out a card on form No. 118. This form provides: "You may proceed to the next signal under control expecting to find an open switch or the track broken or obstructed." The conductor did not have a form No. 118, but wrote "Number 93—block" and the dispatcher's initials upon a paper drinking cup and handed it to Haskins, who thereupon proceeded against the stop signal. After proceeding less than a mile, the train ran into an open switch and collided with cars on a siding. Haskins received injuries in the collision from which he died, and his administratrix brought this suit and recovered damages for his death under the Federal Employers' Liability Act (45 US CA §§ 51–59). The only question presented to us is whether there should have been a directed verdict.

On the trial it was admitted that Haskins was familiar with the rules of the appellant, the automatic electric block signal system, the manner of its operation, and with the meaning of the order "Number 93—block." It appears that after receiving this order he handed it to the fireman, who read it back before the train proceeded toward Glen Lord, where the switch was open. The switch standard at that point was on the fireman's side of the track, six and one-half feet east of the rail. At its top there was a banner thirty inches long and six inches wide, painted yellow, with a five-inch stripe of black six inches from the end. When this banner was in a horizontal position, it indicated that the switch was open; when it was sixty degrees from the horizontal position, it indicated that the switch was closed. The track was practically straight the entire distance from Vine to Glen Lord. The proofs show that Haskins, sitting on his seat box at the right of the engine, had he looked out the side window, could have seen the switch for more than a quarter of a mile before reaching it, and that the boiler of the engine would not have cut off his view until it reached a point about one car length from the switch stand. The conductor and a brakeman testified that after the accident he said to them that he did not see the switch until he felt the engine going over it. The fireman said that the brake application was not made until the engine was going into the siding, and before the application was made he called to Haskins and told him to apply the brakes.

It is not necessary to determine whether the appellant was guilty of negligence in having an open switch on its track. Assuming, however, that it was a negligent act to permit the switch to remain open, the deceased was in the position of one who was fully informed of that fact and was acting under orders to govern himself accordingly. The rules of the company provided that "under control" meant such control as would enable the engineer "to stop within the distance track is seen to be clear." The deceased failed to observe this rule as well as the dispatcher's order, which he admittedly understood. The question, therefore, is one of causal relation. Long ago, in McCalmont v. Pennsylvania R. Co., 283 F. 736, this court, following Great Northern R. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732, pointed out that even in the presence of the defendant's negligence in setting in motion the train of events without which the injury would not have happened, the plaintiff's own conduct may be such as to become the sole proximate cause of the injury. This doctrine was again announced and applied in Southern R. Co. v. Hylton, 37 F.(2d) 843 (6 C. C. A.), which in its essential features is directly in point with the case at bar. In that case a railroad track was under repair. It was the custom of the repair crew to warn approaching trains of the condition of the track and then to put it in temporary repair for the trains to pass. The crew sent out a flagman, who notified Hylton, the engineer, that the track was unsafe. Upon receiving this notice, it was the duty of Hylton to move forward with his train under control. This he did, but later proceeded more rapidly, so rapidly that when he observed the point where the track was under repair he was unable to stop the train and prevent its derailment. It was claimed that the railroad company was negligent in failing to give the engineer a

second warning. After discussing Frese v. C., B. & Q. R. Co., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131, Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212, and Unadilla Valley R. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. Ed. 224, the court held that the engineer's disregard of the notice intended to prevent just such an accident as occurred was the sole proximate cause of the derailment.

In the case at bar it appears that Haskins stopped his train because the block was against him, received permission to proceed with notice that he might expect "an open switch or the track broken or obstructed," and did proceed without observing, as he could have observed, the very thing which he might have expected; that is, an open switch not over a mile from the place where he received the notice and warning. He was in control of the train, and it was his duty so to control it as not to run it into the open switch which he was informed might be in front of him. That the fireman could have discovered the danger but failed to do so did not relieve Haskins of responsibility for the causal connection between his negligence and the collision. Having been informed of the possibilities in front of him and being directed to govern the movements of his train accordingly, he was in a position where he could safely operate the train or, by disobeying orders, so operate it as to cause an accident. It was his act in operating it in the latter manner that was the sole proximate cause of his injuries. Orton v. Pennsylvania R. Co., 7 F.(2d) 36, 38 (6 C. C. A.); Paster v. Pennsylvania R. R. (C. C. A.) 43 F.(2d) 908; Bobango v. Erie R. Co., 57 F.(2d) 667 (6 C. C. A.).

The judgment is reversed, and the cause remanded for a new trial.