## LOUISVILLE & N. R. CO. v. DAVIS.

### No. 6581.

Circuit Court of Appeals, Sixth Circuit.

March 14, 1935.

Ed T. Seay and A. W. Stockell, both of Nashville, Tenn., for appellant.

R. L. Macey and S. L. Felts, both of Nashville, Tenn. (A. V. McLane and Will Fox Fowler, both of Nashville, Tenn., and Albert Williams, of Lebanon, Tenn., on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

While in the employ of the appellant railroad, and while both were engaged in interstate commerce, the decedent Davis was injured and died. In the trial of the action below, brought under the Federal Employers' Liability Act (45 USCA §§ 51–59), issues involving the railroad's negligence, and its causal relation to the resulting death, were submitted to the jury, which returned a verdict for the plaintiff. Of the errors complained of, our conclusion necessitates a discussion of only that which relates to the denial of the defendant's motion for a directed verdict at the conclusion of all the evidence.

Davis was injured while a member of a bridge crew engaged in removing false work under the defendant's railroad bridge near Culleoka, Tenn., on its main line from Louisville to New Orleans. The false work constituted a temporary wooden structure supporting the bridge while new steel was being put in. It consisted of timbers and blocks upon which the steel rested, supported by bents. A bent was made by driving long piles into the ground and fastening them together by nailing braces crosswise and diagonally on the piles. The piles were about thirty-six feet long, sunk five or six

feet into the ground, and the braces were three inches by ten, some twenty feet long and some eight or nine feet long. The braces were fastened to the piles with eight or nine inch spikes. The method used in taking down the false work was to first take out the blocks and timbers, then to pull the braces from the piles with a power crane, after which the piles were removed by the crane. The customary method of removing braces from piles had been to drive wedges between the brace and the pile and then pry off the brace with a crowbar. The power crane had, however, been used on at least one prior bridge operation in which Davis had been employed.

Upon the day of the accident the bridge crew consisted of Paris, the foreman, Davis, and eight or nine others. Davis was a straw boss, and in the foreman's absence, or when the crew was divided, would give orders and direct the work. Paris was present at the time of the accident, but was on the side of the creek opposite Davis when it occurred. Paris had had instructions to take off twenty long braces and clear them of nails in time to load them on a local freight train due at the bridge at noon, so that they could be shipped to Nashville for use upon another bridge. This instruction was communicated to the crew, and Davis was told to get the long braces off the first thing so that they could be loaded. Some of the blocks and timbers taken down the day before had been left on the ground, and the men engaged in removing them were instructed to cease and help get the long braces out. In the débris near the place where Davis was working was a 12x12 inch block, about two or three feet long, upon which had been thrown a short brace eight feet in length in such manner that it lay across the block with one end upon the ground and the other extending about twenty-two inches beyond the block. Just as Davis was returning from the place where the long braces were being piled, and the crane was engaged in pulling a brace from a pile, McNeese, a fellow employee, shouted, "Whoa, the pile is coming up." At that time it appeared that the brace to which the power was being applied was not coming off, but was pulling the pile with it, and upon McNeese's warning the engine was stopped. Davis, being apparently out of range of the pile if it should fall, gave the order, "Go ahead, the pile has got to come up anyhow." McNeese signaled to the operator of the crane, power was again ap-

plied, and the pile drawn from the ground. The upper end of the pile tipped, striking either the crane or the ground. The impact caused the brace to pull loose from the pile, and the butt end of the latter, dropping from a height of about twenty feet, struck the elevated end of the short brace lying upon the block as previously described. Davis was at the time standing upon the lower end of the short brace, with one foot thereon and the other on a bank of dirt. Upon the opposite end of this brace being struck by the falling pile, Davis was catapulted into the air, and upon falling sustained injuries which caused his death.

The two grounds of negligence relied upon by the plaintiff were: (1) The use of a crane instead of hand tools in removing the false work; and (2) the failure of the railroad to provide a safe place for its employees to work.

As to the first ground of negligence, there is no evidence that the crane was not suitable for the purpose for which it was employed, nor that it was defective or negligently operated. The rule is well settled that the master is not bound to use the safest and best method or contrivance to meet the legal requirement of reasonable care, and that in any event reasonable engineering and scientific judgment is not subject to review by a jury. Baltimore & O. R. Co. v. Groeger, 266 U. S. 521, 530, 45 S. Ct. 169, 69 L. Ed. 419; Toledo, St. L. & W. R. Co. v. Allen, 276 U. S. 165, 170, 48 S. Ct. 215, 72 L. Ed. 513; Delaware, L. & W. R. Co. v. Koske, 279 U. S. 7, 11, 49 S. Ct. 202, 73 L. Ed. 578; Richards v. Rough, 53 Mich. 212, 18 N. W. 785.

The second ground of negligence is that the railroad permitted a dangerous accumulation of material on the ground in the neighborhood of the work, and so failed in the exercise of reasonable care to provide a safe place for its employees. This, it is contended, was also in violation of its own rule K, of the "Rules and Instructions for the Government of Maintenance of Way Employees." This rule reads in part as follows: "Do not leave broken parts of cars, pieces of lumber or piles of cinder or trash near tracks where employees may stumble over them. Such obstructions cause a shockingly large number of injuries."

There was evidence that in taking down bridgework it was the custom of the bridge crew to observe rule K. It is contended, however, on the part of the railroad that

the rule must be given a reasonable construction, that it did not require every block or piece of timber to be at once removed from the vicinity of the work, and in any event had not been so construed. We need not consider the scope of the rule. It may be assumed for the purpose of decision that the company was negligent in permitting the wood blocks and the short braces to remain where they were.

■ Decision must, however, turn upon another factual situation, which raises a question of causal relation. It has long been settled in this court, following Great Northern Railway Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732, that even in the presence of the defendant's negligence a plaintiff's own conduct may be such as to become the sole proximate cause of the injury. McCalmont v. Pennsylvania R. Co. (C. C. A.) 283 F. 736; Southern R. Co. v. Hylton (C. C. A.) 37 F.(2d) 843; Pere Marquette R. Co. v. Haskins (C. C. A.) 62 F.(2d) 806; Orton v. Pennsylvania R. Co. (C. C. A.) 7 F.(2d) 36; Bobango v. Erie R. Co. (C. C. A.) 57 F.(2d) 667.

■■ When the crane line was attached to the brace for the purpose of tearing it from the pile, Davis was in no danger. Had the brace been pulled loose and deposited upon the ground he would still have been in no danger. But the brace failed to come loose and the pile itself began to come up. That danger threatened was clear to McNeese, who shouted his warning and stopped the engine. At this point Davis was still in a position of safety. He himself gave the order to go ahead. His was the only voice at that particular place and time that could direct the continuance of the operation, and his was the only voice that did so direct it. Injury followed. It is idle to say that Davis could not have anticipated that the pile would part from the brace. McNeese sensed the danger, gave the warning, and signaled the engine to stop. At that point it became the duty of Davis to see that the pile was again lowered and the brace removed by other means. He failed to do so, and ordered the dangerous operation to proceed. As was said in the Haskins case, supra, "It was his act in operating it in the latter manner that was the sole proximate cause of his injuries." That Davis could not reasonably have anticipated the precise manner in which the injury would occur is not controlling. It is sufficient that a generally dangerous situation was foreseeable. Johnson v. Kosmos Portland Cement Co., 64 F.(2d)

193 (C. C. A. 6); Texas & Pacific R. Co. v. Carlin (C. C. A.) 111 F. 777, 60 L. R. A. 462, affirmed 189 U. S. 354, 23 S. Ct. 585, 47 L. Ed. 849.

The court erred in overruling the defendant's motion for a directed verdict. The judgment below is reversed, and the cause remanded for further proceedings consistent herewith.