## VAN DERVEER v. DELAWARE, L. & W. R. CO.

### No. 341.

Circuit Court of Appeals, Second Circuit.

July 6, 1936.

Thomas J. O'Neill, of New York City (Jeremiah J. Riordan and John V. Higgins, both of New York City, of counsel), for appellant.

Douglas Swift, of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a judgment in an action at law dismissing the complaint, entered on the direction of a verdict at the close of the evidence. The plaintiff sued as administrator of James A. Van Derveer, a freight conductor on the defendant's road, killed while engaged in interstate commerce. The accident happened in the defendant's yard at Secaucus, New Jersey, on February 3, 1935, at about six-thirty o'clock in the morning while it was still dark. The deceased was in charge of engine 145, and was to take to Harrison two meat cars coming in from the west. The train, No. 52, in which these were, was made up of fifty-eight cars, and came in on "Running Track No. 1," which ran east and west, and from which "Lead Track No. 1" branched in a southwest direction. From the "Lead Track" "Tracks No. 4 and 5" branched to the west, Number Four being north of Number Five. The orders were that Gardiner, the head brakeman of Train No. 52, should cut off the first twenty-one cars of that train and haul them east of the switch between "Running Track No. 1" and "Lead Track No. 1," while Engine No. 145, with the deceased on board, waited on "Track No. 5." That engine was then to enter "Lead Track No. 1," back west on "Running Track No. 1," and couple to the meat cars, which, being the twenty-second and twenty-third in the train, would then form the east end of the main string. This was all done, and while Engine No. 145 stood on "Running Track No. 1," Gardiner, in further compliance with his orders, backed the first twenty-one cars of Train No. 52 west along "Lead Track No. 1" and into "Track No. 5." Nineteen of the twenty-one were then cut off and left there, and the locomotive with the remaining two cars immediately started east on "Track No. 5," passed through the switch between it and "Lead Track No. 1" and along "Lead Track No. 1." While so moving the locomotive "side-swiped" the meat car nearest locomotive No. 145, which was then backing along "Lead Track No. 1" and into "Track No. 4." Van Derveer was standing on the south side of this car and was killed. What had happened was this. After he saw the locomotive of Train No. 52 with its twenty-one cars backing along "Lead Track No. 1," Van Derveer moved east on "Running Track No. 1" past the switch between it and "Lead Track No. 1"; and then backed along "Lead Track No. 1" and into "Track No. 4," intending to move west along that track and pick up way-bills for the meat cars. The crew of the locomotive of Train No. 52 were negligent in not seeing Van Derveer's train as it approached, and the only question is whether he was also not only at fault, but so much so that all recovery must be denied.

The road had a rule, No. 56, which reads as follows: "Switches lined up for the movement of a train or engine must not be changed by another crew without first having an understanding with crew of engine or train for which the switches have been lined up, or making sure that the train or engine has been stopped." The

switches between "Running Track No. 1" and "Lead Track No. 1," between "Track No. 4" and "Lead Track No. 1," and between "Track No. 5" and "Lead Track No. 1" had all been lined up by the crew of Train No. 52, when it went into "Track No. 5," and were to be used again when the locomotive returned to "Running Track No. 1." Van Derveer changed two of these switches without coming to any understanding with the crew of Train No. 52, and this was prima facie a fault. In excuse the plaintiff urges that Train No. 52 had come to a "stop" on Track No. 5. Literally it had, because that was necessary in order to cut off the rear nineteen cars of the string, which was to be left behind on "Track No. 5." But the evidence is uncontradicted that the pause was only long enough to make the cut,—less than a minute. The judge held that this pause was not a "stop" within the meaning of the rule, and that Van Derveer's negligence was so primary a cause of his death that it defeated the action.

The plaintiff insists that there was a question of fact about the meaning of the rule; that is, that the jury might have found that Train No. 52 had "stopped." But the meaning is perfectly plain; it is that unless the movement for which the switches have been "lined-up" shall be over, so that that "line-up" will not be needed any more, they shall not be touched without consent. That is so plainly the common-sense of the matter that no jury should be allowed to find otherwise. We do not indeed find in the record explicit testimony that Van Derveer knew that the locomotive was to drop the rear nineteen cars and go back to "Running Track No. 1." But the fact was so and for that reason he could not have "made sure" of the contrary. Besides, the operation was plainly drilling in the yard and the locomotive would normally go back to the thirty-five cars on the running track. Indeed the plaintiff has not argued otherwise. Therefore the only question is whether Van Derveer's breach of the rule bars the action.

■ When an injury to one employee results from the combined fault of himself and a fellow-worker, the damages are divided (section 53, title 45, U.S.Code [45 U. S.C.A. § 53]); but an exception has grown up when the injured employee's fault is the violation of a rule or an express instruction. Great Northern R. Co. v. Wiles, 240 U.S. 444, 36 S.Ct. 406, 60 L.Ed. 732, is scarcely an instance, though sometimes cited as such. It is better classed as a case where the injured person, having before him the consequences of another's fault, does not do what he can to avoid them. The exception first appeared, so far as we can find, in Frese v. Chicago, B. & Q. R. Co., 263 U.S. 1, 44 S.Ct. 1, 68 L.Ed. 131, where a locomotive driver failed to stop his train at a crossing, as required by a rule of the road. He was of course on the right side of his cab and his fireman was on the left, whence came the colliding train; the court seemed to think it doubtful whether the fireman had kept a bad lookout, but went on to say that since the duty was primarily the driver's, it was irrelevant whether he had or not. It has at times been questioned whether the decision should not be limited to situations where the injured person is the superior of the other employee on whose fault he must rely to recover. That would explain not only Frese v. Chicago, B. & Q. R. Co., supra, but Unadilla Valley Ry. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224, because the deceased conductor directed the driver to go on, contrary to the rule. True, the despatcher was also negligent in that case in failing to tell the conductor that the train with which it collided was approaching, but the court said that the message would have merely given the conductor another motive to obey the rule. It is a little hard to see why that might not have been enough to have induced obedience, but if the contrary was intended, the decision is consistent with the supposed gloss. When the same accident was before us in Unadilla Valley Ry. Co. v. Dibble, 31 F.(2d) 239, we applied the doctrine to the driver whom the conductor had directed to break the rule; and that was plainly wrong if the doctrine is limited as suggested. In Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212, it did not appear that the negligent fellow workers were under the driver's authority, and almost certainly they were not; therefore it also seems contrary to the limitation. The Sixth Circuit held the same thing in Southern Ry. Co. v. Hylton (C.C.A.) 37 F.(2d) 843, and we did so again in Paster v. Pennsylvania R. R., 43 F.(2d) 908. Southern Ry. Co. v. Youngblood, 286 U.S. 313, 52 S.Ct. 518, 76 L.Ed. 1124, turned upon the absence of any other negligence than the deceased's. In Rocco v. Lehigh Valley R. Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743, the de-

ceased had failed to ask the position of a train that he was to meet as required by a rule, though had he learned where it was he might rightfully have gone on to meet it. This fault was treated as only an element in determining his general negligence; but if the rule had directed him to wait where he was, Roberts, J. says (288 U.S. 275, at page 279, 53 S.Ct. 343, 77 L. Ed. 743), that the action would have failed. Thus there is no such gloss as that we have been discussing, and the doctrine is merely that if the injured employee has contributed to his injury by the breach of a rule or an instruction ad hoc, he cannot recover. By reason of the phrase, "contributory negligence," in section 53 (45 U. S.C.A.), it might have been possible to put such an exception on the ground that indiscipline is not "negligence," a word more properly confined to inattention to one's safety. But that has never been suggested as the reason, and we should hesitate to ascribe it to the court. Moreover, it is not in any case our province to do more than ascertain the extent of the doctrine. We are satisfied that it speaks generally, whatever the reason, and that the judge was right to direct a verdict.

Judgment affirmed.