## HYLTON v. SOUTHERN RAILWAY CO.
### No. 7241.

Circuit Court of Appeals, Sixth Circuit.

Jan. 13, 1937.

J. A. Fowler, of Knoxville, Tenn. (H. G. Fowler and S. F. Fowler, both of Knoxville, Tenn., on the brief), for appellant.

Chas. H. Smith, of Knoxville, Tenn. (J. A. Susong, of Greeneville, Tenn., and S. R. Prince, Sidney S. Alderman, and H. O'B. Cooper, all of Washington, D. C., on the brief), for appellee.

Before SIMONS and ALLEN, Circuit Judges, and HAHN, District Judge.

HAHN, District Judge.

This is the second appearance of this case in this court. Our former decision is reported as Southern Railway Company v. Hylton, 37 F.(2d) 843 (certiorari denied 281 U.S. 745, 50 S.Ct. 351, 74 L.Ed. 1158). The facts as there stated will not be repeated here. At the last trial the District Judge directed a verdict in favor of the railway company.

From a careful consideration of the testimony taken at the last trial, we find no

material difference between the record now before us and the record upon the former appeal, so far as the then issues are concerned. This is especially true if we consider the several assumptions favorable to the appellant indulged in by this court upon the former hearing.

The freight train operated by Hylton as engineer was completely equipped with an air brake system. As a part of this system each car in the train was equipped with a retainer valve. When the handle of the retainer valve was turned down, it did not affect the operation of the brakes on a particular car, but when the handle was turned up, the valve retained 15 pounds of air pressure in the brake cylinder and prevented the brake on that particular car from releasing entirely even though the engineer placed the automatic brake valve on the engine in release position so as to recharge the braking system to the standard pressure of 70 pounds.

Prior to 1912, appellee required retainer valve handles to be turned up before a train started down the grade where the derailment occurred. About 1912 the Interstate Commerce Commission required 100 per cent. of the cars in a train to be equipped with automatic air brakes, and it was then found by practical experience that the movement of trains down these hills and grades was easily controllable without turning up the retainer valve handles. The practice of requiring the retainer valves to be turned up was therefore discontinued in 1912.

There is evidence in the present record that had the retainer valves been turned up, Hylton would have had better and perhaps adequate control of his freight train and could have avoided the derailment which caused his death. By amendment, after remand of the case, appellant brought into the case the issue as to whether or not the railroad company was negligent in not promulgating a rule requiring brakemen or other trainmen other than the engineer to turn up the retainer valves when the train was descending a grade as heavy as the one they were descending at the time of the derailment.

■ There is no suggestion in the record that since 1912 trains have not been safely and efficiently operated without turning up retainer valve handles. Nor is there any suggestion that if the track laying gang had been where Hylton erroneously assumed it to be, there would have been any difficulty in so operating the train as to avoid any mishap.[1] Hylton, as engineer, was in sole charge of the movement of the train and the braking mechanism, and it was his duty to control the speed of the train. Had he thought it was necessary, he had the right to require the brakemen and other trainmen to turn up the retainers as he was descending the grade and until he passed the point where the track laying gang was at work. It appears from the evidence that he was an engineer of long experience, thoroughly familiar with all the conditions incident to the operation of a train over this run, over which he had been running for at least six months with the same engine which he was operating on the day of the derailment. The failure to promulgate a rule, or, more accurately, the discontinuance of the rule in effect until 1912, cannot be said to have had any causal relation in bringing about the derailment.

■ Hylton knew and fully appreciated all the dangers incident to the operation of freight trains down the various grades of the tracks without turning the retainer valve handles up. He assumed the risk of any injury resulting from such method of operation. Southern Pacific Co. v. Berkshire, 254 U.S. 415, 41 S.Ct. 162, 65 L.Ed. 335; Toledo, St. Louis & Western R. Co. v. Allen, 276 U.S. 165, 48 S.Ct. 215, 72 L.Ed. 513; Chesapeake & Ohio R. Co. v. Leitch, 276 U.S. 429, 48 S.Ct. 336, 72 L.Ed. 638.

■ Further, there is a fatal infirmity in the new ground of negligence alleged. It involves an engineering problem of railroading, and the judgment of the engineers of the Railroad Company may not be reviewed by a jury with a view of finding actionable negligence. The change in the rule, and the omission of the requirement of turning retainer valve handles up, involved a survey of the grades and the brake system employed by the Railroad Company. The judgment of the Railroad Company's engineers in reaching the con-

[1] Was the derailment which is under scrutiny here within the realm of foreseeable consequences as required under the rules as to actionable negligence? Johnson v. Kosmos Portland Cement Co., 64 F.(2d) 193 (C.C.A. 6); Pittsburgh S. S. Co. v. Palo, 64 F.(2d) 198 (C.C.A. 6); Smith v. Lampe, 64 F.(2d) 201 (C.C.A. 6); Louisville & N. R. Co. v. Davis (C.C.A. 6) 75 F.(2d) 849.

clusion they did, may not be reviewed by a jury. Louisville & N. R. Co. v. Davis (C. C.A.6) 75 F.(2d) 849, and cases cited page 850. See, also, Southern Pacific Co. v. Berkshire, supra; Chesapeake & Ohio R. Co. v. Leitch, supra; Atlantic Coast Line R. Co. v. Powe, 283 U.S. 401, 51 S.Ct. 498, 75 L.Ed. 1142.

We conclude, therefore, as in our former opinion (37 F.(2d) 843, at page 845), "that Hylton's general disobedience of the 19 order and his specific and voluntary release of control because he had misjudged the distance of the danger constituted the sole efficient cause of the disaster," etc.

We have applied the principles of our former decision, Southern R. Co. v. Hylton, supra, in subsequent cases: Louisville & N. R. Co. v. Davis (C.C.A.) 75 F.(2d) 849, and cases cited at page 851 (cert. denied 296 U.S. 603, 56 S.Ct. 119, 80 L.Ed. 427). The same principles were applied in Southern Ry. Co. v. Youngblood, 286 U. S. 313, 317, 52 S.Ct. 518, 76 L.Ed. 1124; Paster v. Pennsylvania R. Co. (C.C.A.2) 43 F.(2d) 908, 910; Miller v. Central R. Co. (C.C.A.2) 58 F.(2d) 635, 637; Van Derveer v. Delaware, L. & W. R. Co. (C.C.A. 2) 84 F.(2d) 979, 981, and Bradley v. Northwestern Pac. R. Co. (C.C.A.9) 44 F. (2d) 683, 72 A.L.R. 1341. Rocco v. Lehigh Valley Ry. Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743, strongly relied on by appellant, is not to the contrary.

Our former decision and the cited cases are said to rest upon the doctrine that an employee may not recover under the Federal Employers' Liability Act [45 U.S.C.A. §§ 51–59] if he disobeys "specific orders or standing rules, promulgated for his own safety." Paster v. Pennsylvania R. Co., supra; Miller v. Central R. Co., supra; Van Derveer v. Delaware, L. & W. R. Co., supra. In such circumstances the employee's disobedience is regarded as primary negligence, Miller v. Central R. Co., supra (C.C.A.) 58 F.(2d) 635, at page 637; as "the sole proximate cause of the injury," Louisville & N. R. Co. v. Davis, supra (C. C.A.) 75 F.(2d) 849, at page 851.

The rule in Rocco's Case required him, a track inspector, before leaving with his track inspection tricycle, to ascertain from the railway office the whereabouts of trains. However, whatever information his inquiry developed, the rule permitted him to proceed after making inquiry. Had the rule been of such a tenor that the de-veloped information cast upon him the specific duty to wait where he was, and he had violated such a rule, his action would have failed. Rocco v. Lehigh Valley R. Co., supra, 288 U.S. 275, at pages 279, 280, 53 S.Ct. 343, 77 L.Ed. 743; Van Derveer v. Delaware, L. & W. R. Co., supra. In such circumstances two of the cases distinguished in Rocco's Case and followed in our former opinion, Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212, Unadilla Valley R. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224, and other cases, would have been applicable and controlling to prevent any recovery.

The District Court was right in directing a verdict for the appellee, and the judgment of that court is affirmed.