### ARNOLD v. CHICAGO, ST. P., M. & O. RY. CO.

#### Civil Action No. 1516.

District Court, D. Minnesota, Fourth Division.

Jan. 22, 1946.

William A. Tautges, of Minneapolis, Minn. (Eugene A. Rerat, of Minneapolis, Minn., on the brief), for plaintiff.

Alfred E. Reitz, of St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff commenced an action to recover damages attributed to personal injuries arising out of an accident during the course of plaintiff's employment by defendant as a brakeman, at Bingham Lake, Minnesota, on March 7, 1945, at about 1:10 p. m.

Plaintiff was 29 years of age at the time of the accident and had been employed by defendant as a brakeman for approximately five years. On the day of the accident plaintiff commenced work at about 6:30 a. m. as head brakeman, which required him, when switching, to work nearest the locomotive. On that day he was employed on what is termed in railroad parlance a mixed train, made up of a passenger coach, a combination baggage and express car, and the usual run of cars common to a freight train.

Arriving at Bingham Lake, the crew engaged in some necessary switching, setting out cars from the train to a side track.

Plaintiff, working next to the engine, was taking signals from one Francis Kavanaugh, employed as the rear brakeman and working at the opposite end of the train. Brakeman Kavanaugh testified that upon arriving at Bingham Lake they set out some five cars on the "team track" west of the depot. Kavanaugh manipulated the switch for this train movement and made "the cut" of the five cars, leaving four cars attached to the engine. The next train movement was away from the five cars left on the team track and over the switch. Plaintiff turned the switch after the cut was made, and plaintiff and Kavanaugh walked toward each other. Kavanaugh (who was the senior brakeman) told plaintiff to couple the train to the coach and "line up" the air on the train. Kavanaugh, whose duty it was to spot the cars in the clear, gave the signal to the engine men, and testified, "The train started to back on my signal." Plaintiff got on the corner of the moving train nearest the cars just set out on the team track. Observing that the car upon which plaintiff was riding was not going to clear, Kavanaugh shouted a warning. Plaintiff did not know of the insufficient clearance until it was too late to avoid the accident. As a result, plaintiff's right hand, which grasped a metal handhold, was crushed and mutilated. He was taken to a hospital at Windom at 1:50 p. m. of March 7th. There he was given an anaesthetic and a finger was amputated. On March 14th a second finger was amputated. Pain common to this type of injury was suffered by him. He remained at the hospital for 26 days. Plaintiff testified that his hand shakes continuously, that he lacks grip in the hand, and that, because the fingers amputated were the second and third of the hand he used most, he is permanently and totally disabled from carrying on his occupation as a brakeman. He claims that his average earnings were from $225 to $250 per month and his life expectancy was 35.-33 years.

Defendant introduced evidence tending to prove plaintiff's earnings while employed by defendant averaged $122.25 per month, and further, that in his present condition (as of the time of the trial) plaintiff could perform the work of a passenger train brakeman.

The jury returned a verdict of $30,000 for plaintiff.

The matter now comes before the Court on motions by defendant:

(1) to vacate and set aside the verdict of the jury and for judgment in favor of the defendant in accordance with a motion for a directed verdict, or,

(2) for a new trial or for a reduction of the verdict.

Kavanaugh, as the senior brakeman, was in charge of the train and work connected therewith in the absence of the conductor.

At the time of the accident the conductor was not present. True, the conductor testified it was the duty of each brakeman to see that cars set out were in the clear of traffic moving on an adjoining track. This, at best, is evidence of contributory negligence. There is no suggestion of willful negligence on the part of plaintiff.

Plaintiff's medical experts testified that he sustained a 75% to 90% permanent loss of use of his right hand.

There is no dispute as to the cause of the accident and the resulting injuries to plaintiff. Defendant denies liability and the extent of disability claimed by plaintiff. The foregoing aptly illustrates disputed questions of fact for determination by the jury.

■ Plaintiff should not be deprived of his right to a jury trial by the court where issues of fact, fairly presented, were resolved in favor of plaintiff by a jury verdict. Terminal Railroad Association of St. Louis v. Schorb, 8 Cir., 151 F.2d 361; Tiller, Executor, v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Bailey, Administratrix, v. Central Vermont Ry. Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444.

■ Defendant's authorities supporting the proposition that the cars just set out by plaintiff and his fellow brakeman Kavanaugh tend to constitute an "engineering problem" are distinguished from the facts of the present case. There was no "engineering problem" involved here. Nothing could be simpler. In the light of Kavanaugh's testimony that he was "senior" to plaintiff, was giving plaintiff orders and in fact "engineered" the setting out of the cars so that they should clear, the jury could find that plaintiff had the right, within reasonable bounds, to rely on Kavanaugh's judgment and actions. Failure of the senior brakeman in this respect amounts to actionable negligence on the part of defendant.

Defendant suggests that plaintiff exaggerated in such a manner as to distort the actual facts. One of plaintiff's medical experts contradicted his claimed inability to raise his right arm as he normally should. The signed statement made by plaintiff to defendant's claim agent while plaintiff was in the hospital is not entirely consistent with parts of his testimony. The statement is in evidence. It went with the triers of the facts to the jury room. Any doubts raised thereby were obviously resolved in favor of plaintiff.

Defendant's "fouling of the track" upon which plaintiff was required to work created an emergency that was the proximate cause of the accident. Under the facts of this case the jury could find that plaintiff was without timely knowledge of the insufficient clearance leading to his injuries, and for which defendant is liable.

Defendant complains of misconduct during jury argument. The remarks complained of were without the issues. All things considered, the argument of counsel was not so grossly improper and prejudicial as to amount to error. In the opinion of the Court, it did not exceed permissible limits to such an extent as to be creative of passion or prejudice, nor was it of such character as to justify the granting of a new trial.

Plaintiff met with serious injury. There is little left to the imagination in this respect. He lost two fingers, including the knuckle joint of one, nearest the wrist. To some extent he perhaps contributed toward making his place of work unsafe. He is capable of doing some work that will produce income. Under the circumstances, the Court feels that the amount of the verdict should be reduced.

■ The power of the Court to set aside or reduce a verdict because it is excessive should be cautiously exercised, but here the Court's sense of justice dictates the necessity for a reduction. Cole v. Chicago, St. P. M. & O. Ry. Co., D.C., 59 F.Supp. 443.

■ Upon the entry of a remittitur of $10,000 within the time provided therefor in the order of the Court, defendant's motion for a new trial will be denied. If the suggested reduction of the verdict is not accepted by plaintiff, the motion for a new trial will be granted.