CHICAGO, ST. P., M. & O. R. CO. v.
ARNOLD.

No. 13397.

Circuit Court of Appeals, Eighth Circuit.

March 24, 1947.

Rehearing Denied May 20, 1947.

JOHNSEN, Circuit Judge, dissenting.

Alfred E. Rietz, of St. Paul, Minn. (Nye F. Morehouse, of Chicago, Ill., on the brief), for appellant.

William A. Tautges, of Minneapolis, Minn. (Eugene A. Rerat, of Minneapolis, Minn., on the brief), for appellee.

Before THOMAS, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellee Arnold brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., against the appellant railway company to recover damages for injuries received while in the employ of the railway company as a train brakeman. Arnold's right hand was crushed between the grabiron of a freight car on the side of which he was riding and the corresponding grabiron on the side of another freight car which the train crew, of which Arnold was a member, had placed upon an adjacent track immediately before the accident. A verdict in favor of Arnold for $30,000 was reduced with Arnold's consent to $20,000, and judgment in his favor entered accordingly.

Arnold charged the railway company with negligence causing his injury in failing to use ordinary care to furnish him a safe place to work and in failing to give him timely warning of the danger to which the railway company's negligence in the respect stated had exposed him.

The accident in which Arnold received his injury occurred at 1 o'clock in the afternoon of a clear day, at Bingham Lake, Minnesota. At the time of his injury Arnold was 30 years of age, and had been employed as a railway brakeman for about five years. The train on which he was working on the day of his injury was a mixed freight and passenger train, consisting of a passenger and baggage coach, a number of freight cars, and an engine. The members of the train crew were the locomotive engineer and fireman, the train conductor, and two brakemen. Arnold was the head brakeman which means merely that his duties required him to work near the engine or head of the train. The rear brakeman, Francis Kavanagh, was in charge of and directed the train movements at the time of Arnold's injury. In the work being done at the time of the accident Arnold was subject to the directions and orders of Kavanagh who was his immediate superior.

When the train reached Bingham Lake on the day of the accident, the passenger coach was detached and left standing near the railway station on a track referred to in the evidence as the Currie Maine Line. The engine with the freight cars attached proceeded in a westerly direction along the Currie Main Line until the train passed a switch leading to a track, referred to in the evidence as the elevator or team track, which parallels the Currie Main Line. The purpose of this movement was to enable the freight train to back on to the elevator track and leave several freight cars to be picked up by another train. Either Arnold or Kananagh threw the switches to permit the train to move on to the elevator track and gave the engineer the signal for the backward movement. The train was then pushed on to the elevator track until stopped on signal from Kavanagh, who cut off from the train the cars to be left on the elevator track. Afterwards, on signal from Kavanagh repeated to the engineer by Arnold, the engine with all of the freight cars, except those left on the elevator track, moved out on to the Currie Main Line to a point beyond the switch leading from the elevator track to the Currie Main Line. Arnold then threw the switches necessary to permit the train to back down the Currie Main Line in a westerly direction to the passenger coach which had been left at the station. When this movement of the train, which began on signal from Kavanagh repeated to the engineer by Arnold, had started, Arnold, on order from Kavanagh, mounted the stirrup on the side of the rear freight car attached to the engine, for the purpose of riding down to the passenger coach and seeing that the coach was properly coupled with the train and that the air connections were made. In doing so

Arnold stood with his feet in the stirrup of the freight car holding to the grabirons on the side of the car. In this position the movement of the train back to the passenger coach carried Arnold by the cars which had been left on the elevator track which, as has been stated, was adjacent to and paralleled the Currie Main Line.

The clearance between the Currie Main Line and the elevator track was sufficient to permit Arnold to ride in the position he took on the side of the moving freight car without any danger of striking the cars on the elevator track if these cars had been pushed a proper distance down the elevator track. There was ample space on the elevator track for placing the cars in the clear of cars moving on the Currie Main Line. Unfortunately, however, the cars were not pushed a sufficient distance down the elevator track to permit the safe passage of Arnold in the position in which he was riding on the cars moving on the Currie Main Line. The cars on the elevator track had been stopped on the signal of Kavanagh at a point selected by him and at such a place on the elevator track that there was not sufficient clearance between them and the cars moving past them on the Currie Main Line. The rules of the railway company require that in operations of the character just described cars placed on the elevator or team track should be left at a point on the track affording safe and sufficient clearance between them and cars moving upon an adjacent track. Arnold and Kavanagh were both aware of this rule and both were aware of the necessity of placing the cars on the elevator track so that they would clear cars passing on an adjacent parallel track.

There is testimony in the record to the effect that both Arnold and Kavanagh were charged with the duty of seeing that the cars were placed on the elevator track in a position in which they would clear cars moving on the Currie Main Line. But the primary responsibility in this respect rested upon Kavanagh, because, as rear brakeman, the train crew was working under his orders, and because in this instance he was immediately charged with the selection of the point at which the cars were stopped on the elevator track, and he it was who

stopped them at a point where sufficient clearance was not afforded. The distance between the switch at which Arnold was working and the end of the car nearest to him on the elevator track was not more than 135 feet. Arnold's view of the cars on the elevator track was not obstructed. There is nothing in the evidence to show that Arnold could not have seen from his place of work at the switch that the cars on the elevator track would not clear cars moving along the Currie Main Line, or that he made any effort to see whether the cars were properly placed.

Concerning the facts just recited there is no dispute in the evidence. What happened after Arnold mounted the side of the freight car for the purpose of riding down to the passenger coach, however, is in sharp dispute. Kavanagh testified that after Arnold had mounted the car he, Kavanagh, discovered that there was not sufficient clearance between the car on which Arnold was riding and those left on the elevator track to permit Arnold's safe passage; that he immediately warned Arnold of this situation and directed him to get off the car. He testified that at this time the train was moving along the Currie Main Line at normal switching speed, about five or six miles an hour, and that the end of the car on which Arnold was riding was then approximately one-half a car length from the cars on the elevator track. The engineer corroborated Kavanagh concerning the speed of the train.

On the witness stand Arnold denied that he received any warning whatever from Kavanagh or any order to leave the car moving on the Currie Main Line. He estimated the speed of the train at "seven, eight, nine, or ten miles an hour." He said that if he had received warning of the situation confronting him he would have immediately left the car. He testified that after the cars had been left on the elevator track, Kavanagh walked back toward the switch and ordered him to ride the lead car being moved down the Currie Main Line to the passenger coach. These orders were received while Arnold and Kavanagh were on the ground. However, after he had taken his position on the car, Kavanagh shouted instructions to him concerning the

connection of the air hose. At this time, according to his testimony, the car on which he was riding had passed Kavanagh, and in order to hear Kavanagh's instructions he was looking toward him in a direction opposite to that in which the train was moving. When he turned to look ahead he discovered the danger confronting him, but he was then too close to the cars on the elevator track to permit him to dismount without running the serious risk of being thrown under the train or in the collision with the cars on the elevator track. He tried to meet this emergency by swinging around the car on which he was riding to the ladder on the front or east end of the car, a position which, if reached, would have permitted him to escape injury. He succeeded in getting his body around to the ladder on the east end of the freight car, but before he could release his right hand from the grabiron on the side of that car it was caught and crushed in the manner stated above.

In direct contradiction to his testimony on the witness stand, Arnold gave a statement to a claim agent of the railway company 10 days after the accident, in which he said that Kavanagh warned him of the danger due to the want of clearance between the car on which he was riding and those on the elevator track. In this statement he said that Kavanagh gave this warning at a time when Arnold was approximately one car length or 40 feet from the nearest car on the elevator track; that he could see that the clearance was not sufficient to permit him to ride safely in the position he had taken on the side of the freight car; that he thought he could avoid all danger to himself by swinging his body around to the ladder on the east end of the car on which he was riding; and that he failed to get around in time, with the result that he sustained the injury to his right hand. He did not deny the making of this statement. His explanation of it was that he had more time to think the matter over between the time of making the statement and the trial of the case, which was seven months after his injury; that he was told by the claim agent that the making of the statement was a mere formality; that the exact language of his statement was the claim agent's and not his; and that he was suffering from

pain at the time of his statement and was probably under the influence of sedatives. And while Arnold denied emphatically on the stand that he received from Kavanagh any warning concerning the absence of clearance between the cars on the elevator track and the car on which he was riding or an order to get off the car, he admitted that he could easily have escaped injury if timely warning had been given him, either by leaving the car or by mounting the grabiron ladder to the top of the car on which he was riding.

■ The evidence establishes two facts beyond possible dispute. The first is that the cars on the elevator track were not placed in a position on that track affording clearance between them and cars moving on the Currie Main Line, and that Arnold, in the position in which he was at the time of his injury, was in a place of danger as a result of the improper placing of the cars on the elevator track. The other is that if Arnold received timely warning of the want of sufficient clearance he could easily have avoided his injury. Under the evidence the question whether Arnold's injury resulted wholly or in part from the negligence of the railway company or its employees, or solely from his failure to heed Kavanagh's warning and obey the order to get off the car, was clearly for the jury. Griswold v. Gardner, 7 Cir., 155 F.2d 333; Boston & M. R. R. v. Meech, 1 Cir., 156 F.2d 109; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465; Bailey v. Central Vermont Ry. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Lavender, Adm., v. Kurn et al., 327 U.S. 645, 66 S.Ct. 740; Jesionowski v. Boston & M. R. R., 1947, 67 S.Ct. 401. But since there is no dispute that the danger to Arnold primarily arose from improper placing of the cars on the elevator track, the vital question of fact for the jury was whether Arnold received warning of the want of clearance in time to avoid his injury by the exercise of ordinary care. Whether this issue was submitted to the jury under proper instructions is the decisive question in this case.

■ The court correctly charged the jury as to the general rule of liability in cases arising under the Federal Employers' Liability Act. The jury was told that the burden rested upon the plaintiff to show that his injury proximately resulted wholly or in part from the negligence of the railway company; that the railway company was not an insurer of the safety of its employees; that the negligence of the plaintiff, if any, contributing to the injury was not a defense to plaintiff's action, but was to be considered only in the reduction of the damages; and that if the jury found that the plaintiff was guilty of negligence and "that his negligence was the sole proximate cause of the accident and his injuries" the verdict should be for the defendant. The contentions of the parties were stated in the court's charge as follows:

"It is plaintiff's contention that defendant negligently failed to provide and maintain adequate, sufficient, and safe clearance between the car on the siding track and the car upon which the plaintiff was riding and failed to maintain and provide a reasonably safe place to work for plaintiff; and that defendant and its train crew other than plaintiff created the situation which led to plaintiff's injury.

"It is the further contention of plaintiff that defendant failed to warn him of the insufficient clearance between the car placed on the siding track and the cars being moved on the Currie main-line track. * * *"

"The defendant * * * alleges that whatever injuries the plaintiff may have sustained were caused by plaintiff's own negligence and not on account of any negligence or carelessness of the defendant. Defendant denies that it was negligent in respect to any of the matters which the Court has outlined to you as plaintiff's claims and contentions that defendant was negligent. Defendant further contends that whatever injuries the plaintiff may have sustained * * * were contributed to by his own negligence and that his negligence was the sole proximate cause of said accident and resulting injuries."

In the application of the law of the Federal Employers' Liability Act to the facts in evidence and the contentions of the parties, the court charged the jury as follows:

"It was the duty of defendant to provide and maintain adequate and sufficient clearance between cars standing or moving upon adjoining tracks and to exercise ordinary care to provide and maintain for plaintiff a reasonably safe place of work during the performance of his duties of employment.

* * * * * *

"You are instructed that a person suddenly confronted by a peril through no fault of his own, who in an attempt to escape does not choose the best or safest way, is not negligent because of such choice unless it was so hazardous that the ordinary prudent person would not have made it under similar conditions."

■ The court declined to give, at appellant's request, the following instruction: "You are instructed that if you find that brakeman Kavanagh gave timely warning to the plaintiff that there was not sufficient clearance to permit a man to ride a car past the car spotted on the team track, then your verdict must be for the defendant." On the facts in this case we think the refusal of this requested charge was prejudicial error.

"Liability arises from negligence not from injury under this Act (Federal Employers' Liability Act). And that negligence must be the cause of the injury." Brady v. Southern R. Co., 320 U.S. 476, 484, 64 S.Ct. 232, 236, 88 L.Ed. 239. In the following cases arising under the Federal Employers' Liability Act it is held that a servant's disregard of a specific order or of a standing rule promulgated for his safety bars recovery, though the injury of the employee was due as well to the negligence of other employees of the railway company. Pere Marquette R. Co. v. Haskins, 6 Cir., 62 F.2d 806, 807; Southern R. Co. v. Hylton, 6 Cir., 37 F.2d 843, 845; Hylton v. Southern R. Co., 6 Cir., 87 F.2d 393, 395; Louisville & N. R. Co. v. Davis, 6 Cir., 75 F.2d 849, 851, certiorari denied 296 U.S. 603, 56 S.Ct. 119, 80 L.Ed. 427; Paster v. Pennsylvania R. R., 2 Cir., 43 F.2d 908, 910; Atchison, T. & S. F. R. Co. v. Ballard, 5 Cir., 108 F.2d 768, 771;

Van Derveer v. Delaware, L. & W. R. Co., 2 Cir., 84 F.2d 979, 981; and see Rocco v. Lehigh Valley R. Co., 288 U.S. 275, 279, 53 S.Ct. 343, 77 L.Ed. 743; Great Northern R. Co. v. Wiles, 240 U.S. 444, 448, 36 S.Ct. 406, 60 L.Ed. 732. In Van Derveer v. Delaware, L. & W. R. Co., supra, page 981 of 84 F.2d, the opinions of the Supreme Court frequently cited as sustaining the rule stated are analyzed, and the conclusion is reached that if the injured employee has contributed to his injury by the violation of a rule or express instruction he cannot recover. See also the discussion of cases by the same court in Paster v. Pennsylvania R. R., supra, page 910 of 43 F.2d. In the Paster case the court said that although it had previously held that the employee's breach of a rule was merely contributory negligence "it seems to us that we are now bound to say that it defeats liability altogether." The cases cited are examples in actions arising under the Federal Employers' Liability Act of the application of the general rule that "In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent." Restatement of the Law of Torts, Negligence, § 431.

█ Counsel for appellant did not ask the court to charge the jury concerning the result following a finding that Arnold's immediate superior expressly ordered him to leave the car on which he was riding at the time of his injury. If requested, the charge would have been required by the evidence. For it is undisputed in the evidence that Kavanagh was Arnold's superior, that it was the duty of Arnold to obey Kavanagh's directions in the work which was being done at the time of the injury, that such an order could have been obeyed by Arnold without the slightest risk of injury to him, and Kavanagh testified that he gave the order to leave the car immediately upon the discovery of the want of sufficient clearance. The appellant in the refused instruction asked the court to charge the jury that if Kavanagh gave Arnold timely warning of the insufficient clearance, plaintiff was not entitled to recover. On the facts in this case we think the legal result of Arnold's failure to obey the warning, if given, is the same as that which would have followed his failure to obey an express order to leave the car. This is true because of the undisputed evidence in this case.

The position which Arnold took on the moving car was one customarily taken by brakemen performing the work which Arnold was doing at the time of his injury, but the performance of his work did not require his presence in the particular place in which he was at the time. On the contrary, if Arnold did receive Kavanagh's warning, to put the matter in the words of the refused instruction, "that there was not sufficient clearance to permit a man to ride a car past the car spotted on the team track," he was immediately advised that any regard for his own safety required him to leave his place on the car. Under any interpretation of the evidence Arnold could not have failed to know, on receipt of the warning, that the necessity for him to leave his position on the moving car was imperative and immediate. This indeed is the only interpretation that can be placed upon Arnold's testimony. Arnold was an experienced brakeman. He was familiar with the arrangement of the tracks at the place of his accident. He had assisted in the placing of the cars on the elevator track. He knew without being told that in the absence of sufficient clearance between those cars and the car on which he was riding he could not safely remain where he was. If he received notice from Kavanagh that there was not sufficient clearance to permit him to ride past the cars on the elevator track, his failure to heed the warning and leave the car was the sole cause of his injury. On receipt of Kavanagh's warning, to borrow the language of Great Northern R. Co. v. Wiles, supra, 240 U.S. at page 448, 36 S.Ct. at page 408 Arnold's "duty was as clear as its performance was easy. He knew the danger of the situation and that it was imminent; to avert it he had only to descend from his train * * *."

Some indication of the reason for the trial court's refusal to give the requested charge is found in its memorandum opinion on petition for rehearing. The court said [63 F.Supp. 986, 988]: "Defendant's 'foul-

ing of the track' upon which plaintiff was required to work created an emergency that was the proximate cause of the accident. Under the facts of this case the jury could find that plaintiff was without timely knowledge of the insufficient clearance leading to his injuries, and for which defendant is liable."

The jury could have found under the evidence that Arnold was without timely knowledge of the insufficient clearance leading to his injury. On the other hand, the jury may as well have found that Arnold did receive timely warning of the close clearance between the cars. Indeed, it is conceivable that the jury may have found that Kavanagh gave the warning. In the absence of the requested instruction the jury could not be expected to understand that Arnold's failure to obey the warning, if given, was the sole proximate cause of his injury within the meaning of the court's charge. On the charge given the jury may have considered Arnold's failure to obey the warning, if given, to establish only contributory negligence on his part, a finding consistent with a verdict for the plaintiff. It will not do to say that the defendant's "fouling of the track" created an emergency that was the proximate cause of the accident. If the jury found that Arnold had timely warning of the insufficient clearance, the emergency with which he was confronted at the moment of his injury was the result, not of the "fouling of the track," but of his failure to obey the warning. On the facts in evidence it is hardly conceivable that the jury could have failed to find the railway company guilty of negligence in placing the cars on the elevator track. The only real issue of fact left in the case for the jury was whether Arnold received the warning to which Kavanagh testified. The court should have advised the jury of the legal result following the determination of this question of fact.

 Since we reach the conclusion that the case must be reversed because of error in the court's charge to the jury, it is not necessary to inquire into the merit of appellant's assignment concerning the argument of counsel for appellee. The assignment grows out of the fact that in his opening statement counsel told the jury that Arnold was a young man with a wife and minor children dependent upon him for support, statements which were repeated in the closing argument to the jury, with the assertion that the action of the railway company in taking the written statement from Arnold 10 days after the injury and while he was in the hospital was an example of the "rotten tactics" pursued by the railway company in cases of this character. These statements of counsel for appellee were improper. Chicago & N. W. R. Co. v. Kelly, 8 Cir., 74 F.2d 31, 36; Thomson v. Boles, 8 Cir., 123 F.2d 487, 495; Minneapolis, St. Paul & S. S. M. R. Co. v. Moquin, 283 U.S. 520, 521, 51 S.Ct. 501, 75 L.Ed. 1243; New York Central R. Co. v. Johnson, 279 U.S. 310, 318, 49 S.Ct. 300, 73 L.Ed. 706. The impropriety of the statements in question is not excused by the fact that the written statement of Arnold to the claim agent, introduced in evidence by counsel for appellant, contained information concerning Arnold's family responsibilities. We mention this assignment here because of the probability of a second trial of this action, and to say that a repetition of arguments of this character in a second trial of the case may not be ignored as mere inadvertence of counsel nor will reversible error in such an event depend upon a showing of prejudice. See Palmer v. Miller, 8 Cir., 145 F.2d 926, 932.

Reversed and remanded.

JOHNSEN, Circuit Judge (dissenting).

I do not believe that the language of the Employers' Liability Act, 45 U.S.C.A. § 51 et seq., permits of the exception or limitation which the majority opinion adopts—that "a servant's disregard of a specific order or of a standing rule promulgated for his safety bars recovery, though the injury of the employee was due as well to the negligence of other employees of the railway company."

The Act provides, 45 U.S.C.A. §§ 51, 53, that "Every common carrier by railroad while engaging in [interstate] commerce * * * shall be liable in damages * * * for * * * injury or death [of an employee] resulting in whole or in part from

the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment", and "In all actions * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

This language seems to me clear and absolute. Where any negligence on the part of a railroad company is a factor in causing injury or death to an employee in interstate commerce, the railroad company is liable. Contributory negligence of the employee does not bar a recovery, but it merely operates to reduce the liability of the railroad company in proportion to its causal amount. But, if a violation by the railroad company of some safety statute enacted for the protection of employees is a factor in causing the accident, the railroad company cannot avail itself of the contributory negligence of the employee for any purpose. That is as far as the two quoted sections of the Act go. What the majority opinion in effect does, it seems to me, is to add to them, as a counterpart to the legislative proviso that no contributory negligence of the employee will be recognized where the railroad company's violation of a statute enacted for the safety of employees is in any way a causal factor, a judicial proviso that similarly no negligence of the railroad company will be recognized where the employee's violation of a company rule or specific order is in any way a causal factor. That, I think, is judicial legislation.

I recognize that there are cases in other Circuits that support the majority's view, the two most direct authorities being Paster v. Pennsylvania R. R., 2 Cir., 43 F.2d

908, and Van Derveer v. Delaware, L. & W. R. Co., 2 Cir., 84 F.2d 979. In both these cases the opinion was written by Judge Learned Hand, for whose judicial talent I have the greatest respect and admiration. Judge Hand seems to think that the exception to an employee's right to recover for negligence of the railroad company, if he has violated a rule or order, was given birth in Frese v. Chicago, B. & Q. R. Co., 263 U.S. 1, 44 S.Ct. 1, 68 L.Ed. 131. See 84 F.2d at page 981. I do not believe that the opinion of Mr. Justice Holmes in the Frese case may be that broadly read. It seems to me that it goes no further legally than to hold that in the situation of that case the negligence of the employee, involving a failure to perform a duty imposed upon him by the statutes of Illinois, was so clearly the immediate cause of the accident, and the existence of any causative negligence on the part of any other employee of the railroad company was so speculative, that it was proper to deny a recovery for the employee's death.

Davis v. Kennedy, 266 U.S. 147, 45 S.Ct. 33, 69 L.Ed. 212, Unadilla Valley R. Co. v. Caldine, 278 U.S. 139, 49 S.Ct. 91, 73 L.Ed. 224, and Southern R. Co. v. Youngblood, 286 U.S. 313, 52 S.Ct. 518, 520, 76 L.Ed. 1124 seem to me equally to hold, not that any negligence of the railroad company would not be recognized as a basis for recovery where the employee had violated a rule or order, but that in each of the particular situations involved no causative negligence on the part of the railroad company could reasonably be regarded as having existed, and the employee's disobeyal of the rule or order was—in the language of the Southern R. Co. case—"the sole efficient cause" of the accident. That this is the correct view of these cases is, I think, confirmed by Rocco v. Lehigh Valley R. Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743. In that case, the employee's infraction of a rule was held not to bar a recovery and a judgment dismissing the action was reversed, on the ground that the evidence would entitle the jury to find that the accident "was in part due to the negligence of the [railroad company's other] servants" and that the plain-

tiff's infraction was merely "a concurrent cause". 288 U.S. at page 280, 53 S.Ct. at page 345.

But, even if it were proper for the courts to add the discussed exception to the Act, that an employee who has violated a safety rule or specific order cannot recover for any concurrent negligence of the railroad company that has been a factor in causing the accident, I do not believe that such an exception would automatically cover also the heeding of warnings of danger after an employee has been put in a position of peril. That seems to me to be adding further length to Judge Hand's doubtable exception. Conduct, when one suddenly is made aware of existing danger to himself, has no yes-or-no boundary line, such as the obeying or disobeying of rules or orders may perhaps be argued to have, and the law cannot give it any. The only test of responsibility that it is at all possible to apply in such a situation is the general traditional standard of how the ordinary person would act under similar circumstances. That inescapably in such a situation is a question for the jury. It seems to me therefore that there could not possibly be any error in refusing to give the absolute instruction requested by the railroad company in this case that, "if you find that brakeman Kavanagh gave timely warning to the plaintiff that there was not sufficient clearance to permit a man to ride a car past the car spotted on the team track, then your verdict must be for the defendant." The majority reverses the judgment here because of the trial court's failure to give this instruction.

As a foundation for its holding that the failure to give the requested instruction was error, I think the majority has made a further invasion of the function of the jury, by declaring that "if Arnold [plaintiff] received timely warning of the want of sufficient clearance he could easily have avoided his injury." I am not certain just what the requested instruction or the majority opinion intended the jury to understand, or just what the jury would have understood, by "timely warning". (Indeed, it would seem that the ambiguity of the term would alone make it impossible to hold that reversible error could exist in refusing to give the tendered instruction). But assuming for present purposes that timely warning meant, and would be understood by a jury as meaning, warning within such time as would adequately have enabled the employee to protect himself from injury, I still do not see how it could be declared that, if Arnold received such a timely warning, he was absolutely bound, as a matter of law, in the present situation, to have avoided his injury.

Under the evidence, it would appear that Arnold had three possible courses of action open to him. He might have jumped off the moving car; he might have tried to crawl up the side of the car to the top of it; or he might have undertaken to swing himself around from the side of the car to the front of it (which was what he was doing when the accident occurred and caught his hand). Kavanagh, as a witness for the railroad company, testified that the car at the time was moving 4 to 5 miles an hour. Arnold testified that it was moving 7 to 10. Kavanagh further said that, at the time he warned Arnold of the danger, Arnold was about half-a-car length from the point where the accident occurred. The cars involved were shown to be about 40 feet in length. At the time of Kavanagh's claimed warning, therefore, Arnold was only 20 feet from the point of impact, traveling forward at a speed of from 4 to 10 miles an hour. By arithmetical calculation, at 4 miles per hour, he had less than $3\frac{1}{2}$ seconds in which to grasp the warning and save himself from injury. At 10 miles per hour, he had less than 2 seconds. It does not seem to me that anything further is necessary to demonstrate that it was, and could only be, for the jury to say what he was required to do and whether he could thereby have avoided the injury.

To summarize, I believe that no judicial exception to the Federal Employers' Liability Act is warranted to deny an employee's right to recover for negligence of the railroad company merely because his violation of a rule or order has been a factor in producing his injury; that in order to deny him the right to recover under the Act, his violation of the rule or order (or his other negligence) must have been the sole proximate cause of the accident; that,

even if the exception referred to were proper under the provisions of the Federal Employers' Liability Act, it cannot legitimately be held to cover equally the heeding of warnings of danger given after an employee has been put in a position of peril by the railroad company's negligence; that there was therefore no error in refusing to instruct the jury that in this case, if "timely warning" of the danger was given, the jury was required to return a verdict for the railroad company; and finally, that to declare as a matter of law on the evidence in the record that if the employee "received timely warning of the want of sufficient clearance he could easily have avoided his injury" is a still further invasion of the functions of the jury under the Act.

For these reasons, I feel obliged to dissent.